Certiorari Granted, August 5, 2011, Docket No. 33,077

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-081

Filing Date:  May 19, 2011

Docket No. 28,700

STATE OF NEW MEXICO,

　　　Plaintiff-Appellee,

v.

ALICIA VICTORIA GONZALES,

　　　Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Neil C. Candelaria, District Judge

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Jane B. Yohalem
Santa Fe, NM

for Appellant

OPINION

KENNEDY, Judge.

{1}　　This case raises an issue of first impression as to whether a case that might otherwise be regarded as vehicular manslaughter is punishable under our child abuse statute simply because the person killed or injured by Defendant's criminal negligence was a child.  Here, we distinguish between criminal negligence that endangers the public at large and results in injury or death to a member of the public, who happens to be a child, and criminally negligent conduct that creates a discernable risk of danger to a particular child or particular

1

children.  We hold that a discernable risk of danger to a particular child or particular children is required to support a conviction for negligent child abuse by endangerment under NMSA 1978, Section 30-6-1(D)(1) (2004) (amended 2009).  We further hold that for a defendant to be criminally liable for child abuse by endangerment, he or she must be aware of a particular danger to the identifiable child or children when engaging in the conduct that creates the risk of harm.

{2}     In this case, Defendant contends that the district court erred in failing to grant her motion for dismissal and her motion for directed verdict on the child abuse by endangerment charges on the basis that she was unaware that her conduct posed a particular and foreseeable risk of likely injury to the children injured by her actions.  The district court similarly denied Defendant's proposed jury instructions requiring child abuse by endangerment to include an element of awareness.  We conclude that the district court erred.  Accordingly, we reverse Defendant's convictions for negligent child abuse by endangerment, as she was not proven to be aware of the danger to the particular children who were the victims of her drunk driving.

{3}     Defendant argues that the State is barred from retrying her for vehicular homicide and intentional child abuse.  We agree and hold that double jeopardy bars retrial of Defendant for vehicular homicide.  We remand for vacation of the child abuse convictions and discharge of Defendant and the amendment of the judgment and sentence to reflect those charges on which Defendant's convictions remain unaffected by this Opinion.

## I.     BACKGROUND

{4}     Defendant drove on the interstate while severely drunk, sideswiped one car, and ploughed into the rear of another car, in which two minors, Manuel and Deandre, were riding in the back seat.  Manuel was pronounced dead at the scene; Deandre received minor injuries.  As a result, the grand jury indicted Defendant for two counts of negligent child abuse by endangerment, including one count of endangerment resulting in death.[1]  Defendant was also charged and convicted of aggravated driving while intoxicated and leaving the scene of an accident.  Defendant does not contest those convictions, and they are not a part of this appeal.

{5}     Prior to trial, Defendant filed a motion to dismiss the charges of child abuse,  arguing that child abuse cannot be charged when the children injured were "not in the vehicle of the accused and the accused [was] not aware of their presence on the roadway."  (Emphasis omitted.)  Defendant argued that the State sought to criminalize as child abuse any negligent behavior undertaken on the road when a child might be present in another car without consideration of whether Defendant's conduct specifically put a child at risk.  The State did

---

[1] Defendant was alternatively indicted for intentional and negligent child abuse in each count.  She was convicted of negligent child abuse.

not disagree with this characterization, stating that any conduct undertaken in reckless disregard of the "welfare and safety of everyone on the road" was sufficient to prove child abuse. The State stated:

> Criminal negligence does not require a showing that [D]efendant had specific knowledge of her victims. It only requires a reckless disregard of the danger that she is putting her potential victims in. . . . It was foreseeable that her conduct could endanger the lives of not only adults, but also children. Children are a part of the general public, a more vulnerable part.

**{6}**     During the hearing on the motion to dismiss, the district court inquired of the State why child abuse had not been charged in the alternative with vehicular homicide. Counsel for the State initially did not know, but later stated that its decision to charge Defendant only with child abuse and not vehicular homicide was intentionally undertaken as an exercise of its discretion. The State thus did not pursue vehicular homicide charges at any time.

**{7}**     Following extensive argument by the parties, the district court held as a matter of law that "the current statute as it stands under child abuse does not necessitate or need an awareness factor . . . all that's required as far as knowledge is that the defendant knows or should have known that the defendant's conduct created the substantial or foreseeable risk." The district court further stated its opinion that a "person [can] cause [a child to be placed] or place a child . . . in a dangerous situation, life or health, . . . and not be aware of it." The district court denied Defendant's motion, and the case proceeded to trial, resulting in Defendant's convictions and her appeal. The issue continued to be raised by Defendant throughout the trial, including a motion for directed verdict, with identical results.

## II.     STANDARD OF REVIEW

**{8}**     We review the interpretation of a statute in the context of a motion to dismiss de novo with the primary goal of ascertaining and giving effect to the intent of the Legislature. *State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022. Criminal statutes are to be strictly construed. We take care that criminal statutes are not applied beyond their intended scope and are "defined with appropriate definiteness." *State v. Chavez*, 2009-NMSC-035, ¶ 10, 146 N.M. 434, 211 P.3d 891 (internal quotation marks and citation omitted); *see Smith*, 2004-NMSC-032, ¶ 8 (applying a de novo standard of review to determine whether conduct exists within the intended scope of the child endangerment statute).

**{9}**     Double jeopardy arguments cannot be waived. A defendant may raise such arguments at any time. NMSA 1978, § 30-1-10 (1963); *see State v. Jimenez*, 2007-NMCA-005, ¶ 11, 141 N.M. 106, 151 P.3d 67; *State v. Vaughn*, 2005-NMCA-076, ¶ 8, 137 N.M. 674, 114 P.3d 354. When such arguments arise on appeal, we apply a de novo standard of review. *Jimenez*, 2007-NMCA-005, ¶ 11.

3

## III.   DISCUSSION

### A.   The Current Landscape of Child Abuse By Endangerment

{10}    Until now, every child abuse by endangerment case in New Mexico pertaining to a defendant's operation of a motor vehicle while intoxicated involved the defendant's knowledge or placement of the children in the vehicle prior to the conduct that constituted the endangerment. *See, e.g.*, *State v. Chavez*, 2009-NMCA-089, ¶ 14, 146 N.M. 729, 214 P.3d 794 (holding that a defendant who drove drunk with a child in the car was guilty of child endangerment); *State v. Watchman*, 2005-NMCA-125, ¶¶ 4-5, 138 N.M. 488, 122 P.3d 855 (holding that the defendant was guilty of child abuse when she drove drunk to a bar with her child and left the child unattended in a dangerous parking lot); *State v. Montoya*, 2005-NMCA-078, ¶¶ 2, 4, 137 N.M. 713, 114 P.3d 393 (holding that the defendant's drunk driving with unrestrained children in his truck was sufficient to prove child abuse); *State v. Santillanes*, 2001-NMSC-018, ¶¶ 2, 38, 130 N.M. 464, 27 P.3d 456 (affirming the defendant's child abuse conviction when the defendant's drunk driving resulted in the death of the four children in his vehicle); *State v. Castañeda*, 2001-NMCA-052, ¶¶ 19-22, 130 N.M. 679, 30 P.3d 368 (affirming the defendant's child abuse conviction when the evidence showed that the defendant drove on the wrong side of a divided highway with children in her vehicle who were not in safety seats).

{11}    Similarly, in *State v. Lujan*, the defendant was convicted of child abuse when he attacked another car with his own vehicle with prior knowledge that the victim's car was transporting a child. 103 N.M. 667, 669-70, 712 P.2d 13, 15-16 (Ct. App. 1985). His awareness of the child's presence within the car prior to his attack was dispositive. *Id.* In each of the above cases, the child was within the circumstantial ambit of foreseeable risk and likely injury created by the defendant. The defendant's behavior was directed toward the child, and the defendant was or should have been aware of the risk to the child of whose presence he or she knew of at the time.

{12}    We have further interpreted Section 30-6-1(D) "to address situations where an accused's conduct exposes a child to a significant *risk* of harm," irrespective of whether the child was actually injured. *Chavez*, 2009-NMSC-035, ¶ 15. Nonetheless, there has been no appellate case in New Mexico for endangering a child whose presence was not previously known to the defendant at the time the negligent and dangerous behavior was commenced. Because our appellate courts have not previously determined whether the Legislature intended the child endangerment statute to encompass conduct similar to that in the present case, we turn to the language of the statute for guidance.

### B.   Criminal Negligence

{13}    According to our rules of statutory construction, the statute's plain language "is the primary indicator of legislative intent." *High Ridge Hinkle Joint Venture v. City of*

4

*Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citation omitted). In addition, we are to apply the ordinary meaning of the words in the statute unless the Legislature indicated otherwise. *Id.* We now apply these rules in interpreting the meaning of Section 30-6-1(D)(1).

**{14}** Section 30-6-1(D)(1) criminalizes abuse of a child by endangerment,[2] stating, "[a]buse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health[.]" At issue is whether this statute can be construed to apply in situations where a defendant neither knows of the presence of the child endangered by his or her driving, nor specifically endangers that child any more than his or her actions may endanger the general public. Thus, we must determine the Legislature's intent when it required a defendant to, at minimum, "negligently" cause or permit the child to be placed in a situation that endangered the child's life.

**{15}** In *Santillanes v. State*, our Supreme Court held that in convicting a defendant of criminally negligent child abuse, the state must prove negligence to a criminal, rather than civil, standard. 115 N.M. 215, 223, 849 P.2d 358, 366 (1993). The Court specifically rejected the idea rooted in a civil negligence standard that child abuse "encompassed any and all harm to a child[.]" *Id.* at 219, 849 P.2d 362. "What distinguishes civil negligence from criminal negligence is not whether the person is subjectively aware of a risk of harm; rather, it is the magnitude of the risk itself." *State v. Schoonmaker*, 2008-NMSC-010, ¶ 43, 143 N.M. 373, 176 P.3d 1105. In the context of child abuse, criminal negligence is defined as something beyond mere civil negligence or accidental conduct because it requires that a person "knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." *Garcia v. State*, 2010-NMSC-023, ¶ 33, 148 N.M. 414, 237 P.3d 716 (internal quotation marks and citation omitted). In *Schoonmaker*, our Supreme Court indicated that the "magnitude of the risk" could act as a way to infer a person's subjective knowledge of the risk posed to a child and its likely consequences. 2008-NMSC-010, ¶¶ 43-45. *Schoonmaker* pointed out that a person could act with the requisite knowledge should the person violently and intentionally shake a child without a subjective knowledge of the risk of harm or indifference to the risk of that behavior, simply because the magnitude of the risk to the child is so high. *Id.* ¶ 48.

**{16}** We have held that the child abuse by endangerment statute was "intended to address conduct with potentially serious consequences to the life or health of a child." *State v. Trujillo*, 2002-NMCA-100, ¶ 21, 132 N.M. 649, 53 P.3d 909. This standard was not intended by the Legislature to render conduct that creates "a mere possibility, however

---

[2] The crime of negligent abuse of a child by endangerment under Section 30-6-1(D)(1) is predicated on the same elements regardless of the consequence to the child, which only influences the degree of punishment for the offense. Thus, we apply the same analysis to both counts of negligent child abuse of which Defendant stands convicted.

5

remote, that harm may result to a child" the basis for criminal liability. *State v. Trossman*, 2009-NMSC-034, ¶ 20, 146 N.M. 462, 212 P.3d 350 (internal quotation marks and citation omitted). In *Trujillo*, we stated that for the purposes of child endangerment, the behavior "that *may* cause harm," must place a child "directly in the line of physical danger." There, we reaffirmed that "that mere proximity to a dangerous situation was insufficient to support a conviction for child abuse by endangerment." 2002-NMCA-100, ¶¶ 17-18 (internal quotation marks and citations omitted). By casting a net to include the endangerment of the general public of which children are a part, the State's argument ignores that the statute only criminalizes endangering children.

**{17}** Our Supreme Court in *Chavez* provided factors to consider in determining whether there was a substantial and foreseeable risk of harm to the child, so as to authorize a charge of criminal child abuse by endangerment. Under *Chavez*, a court should consider (1) the gravity of the risk created by the defendant, (2) whether the underlying conduct violates a statute, and (3) the likelihood of harm to the child. 2009-NMSC-035, ¶¶ 23-25. Moreover, "[i]t is the gravity of the risk that serves to place an individual on notice that his conduct is perilous, and potentially criminal[.]" *Id.* ¶ 23. Although our Supreme Court stated the likelihood that the harm will occur is no longer a determinative factor in the criminal negligence analysis, it still "remains an important consideration when evaluating the magnitude of the risk." *Id.* ¶ 26. This is particularly pertinent to endangerment cases "where the risk of harm is too remote, which may indicate that the harm was not foreseeable." *Id.*

**{18}** Concerned with the breadth of conduct potentially ensnared by the phrase "may endanger," our Supreme Court in *Chavez* limited criminal liability under Section 30-6-1(D)(1) by excluding liability for risks posed by conduct directed at a child that only theoretically endangered the life or health of a child. *Chavez*, 2009-NMSC-035, ¶¶ 18-19 (internal quotation marks and citation omitted). "Taken literally, our endangerment statute could be read broadly to permit prosecution for any conduct, however remote the risk, that *may* endanger [a] child's life or health. However, by classifying child endangerment as a third-degree felony, our Legislature anticipated that criminal prosecution would be reserved for the most serious occurrences, and not for minor or theoretical dangers." *Id.* ¶ 16 (alteration in original) (internal quotation marks and citation omitted). Instead, our Supreme Court stated that the statute required a reasonable probability or likelihood that the child's life or health would be endangered by the defendant's conduct. *Id.* As such, the risk of harm posed to the child must be "*substantial and foreseeable*." *Id.* ¶ 22 (internal quotation marks and citation omitted); UJI 14-604 NMRA. Our Supreme Court noted this to mean that the defendant must have "place[d] a child within the zone of danger and physically close to an inherently dangerous situation." *Chavez*, 2009-NMSC-035, ¶ 26 (alteration in original) (internal quotation marks omitted) (quoting *State v. Jensen*, 2006-NMSC-045, ¶ 10, 140 N.M. 416, 143 P.3d 178); *see Trossman*, 2009-NMSC-034, ¶ 20 (stating that in creating the crime of child abuse by endangerment, "the Legislature did not intend to criminalize conduct creating a mere possibility, however remote, that harm may result to a child" (internal quotation marks and citation omitted)). Our Supreme Court further commented that a remote risk of harm may indicate that it was not foreseeable. *Chavez*, 2009-NMSC-035, ¶ 26.

6

**{19}** For instance, in *State v. Clemonts*, we reversed the defendant's conviction, holding that the defendant's speeding and minor traffic violations committed during a slow speed police chase did not pose a substantial risk to the children in the car because the risk of harm was too remote. 2006-NMCA-031, ¶¶ 16-17, 139 N.M. 147, 130 P.3d 208. We also reversed the conviction in *Trujillo*, holding that the defendant's actions had not placed a child in the direct line of danger when a child only witnessed the defendant's attack on her mother from another part of the house and therefore did not expose the child to a significant risk of harm. 2002-NMCA-100, ¶ 7.

**{20}** From this discussion, we reach two conclusions. First, endangerment is something that exists as an antecedent to any harm that might befall a child. We reach this conclusion by observing that all of these cases describe endangerment rooted in criminal negligence as arising from a danger to the child that is known or capable of being known. The defendant must have knowledge of potential and likely consequences of the endangering behavior that results in a palpable and foreseeable danger to a child. This is more than merely a "possibility, however remote, that harm may result to a child." *Trossman*, 2009-NMSC-034, ¶ 20. Where the magnitude of a risk of injury is significant enough to impute knowledge of the palpable and foreseeable danger to a child, the crime of endangerment strongly supports an awareness on the part of the defendant that the child is foreseeably within the trajectory of risk the defendant created. Stated another way, placing a child in a dangerous situation and in the direct line of danger, however briefly, must precede the injury that is likely to result from that danger. Since it is the endangerment and not the resulting injury that constitutes the offense, there must be an actual or imputed foreseeability of danger directed toward the children who might be injured as a result of Defendant's acts.

**{21}** Second, and contrary to the State's contention at trial, the defendant's conduct must create a substantial and foreseeable risk of harm to an identified or identifiable child within the zone of danger. The risk cannot be merely hypothetical, as the child must be physically close to an inherently dangerous situation of the defendant's creation. The extension of the risk to encompass any unidentified child who might hypothetically be present within the general population that is endangered by a drunk driver's conduct is too broad an application of this statute. The child victim cannot become identified simply by being injured by Defendant: identification of the child and the risk to that child must precede the injury. We now discuss the particularity with which the conduct must be directed at a child victim to constitute child endangerment.

## C. Criminal Negligence Must be Directed Toward a Child

**{22}** In addition to the requirement that the defendant create a substantial and foreseeable risk of harm—placing a child in the zone of danger—the defendant must also direct his or her criminal negligence toward a child specifically and not solely at the general public. The State argues that it can meet its burden to prove child abuse by endangerment, simply by

showing that Defendant put children at risk when she put the public as a whole at risk in driving drunk.

**{23}** We agree that the Legislature intended to protect children through this statute because of their vulnerability. Our Supreme Court has been quite clear to point out that the child abuse statute is "designed to give greater protection to children than adults because children are more vulnerable than adults and are under the care and responsibility of adults. When an adult, without justification, endangers a child's safety, the adult is more culpable than when the safety of another adult is jeopardized." *Santillanes*, 2001-NMSC-018, ¶ 24 (internal quotation marks and citations omitted). Thus, in protecting this vulnerable group, the Legislature designated child abuse to be a more egregious crime than other identical negligent behavior resulting in non-intentional homicide. Negligent child abuse resulting in death of a child is a first-degree felony. Section 30-6-1(F). Yet, the Legislature has designated involuntary manslaughter to be a fourth-degree felony and homicide by vehicle while driving drunk a third-degree felony. NMSA 1978, § 30-2-3(B) (1994) (involuntary manslaughter); NMSA 1978, § 66-8-101(C) (2004) (homicide by vehicle while driving drunk). The classification of negligent child abuse by endangerment that consequently results in death as a more serious felony than vehicular homicide or involuntary manslaughter is therefore a direct reflection of the severity with which the Legislature views conduct directed at a child.

**{24}** However, precedent indicates that to be convicted of child endangerment, the defendant must act in such a way so as to specifically endanger the child. The defendant must do more than act in a way that endangers the public as a whole. In *Chavez*, our Supreme Court required that the risk created by the defendant create conditions that "present truly consequential and foreseeable threat of harm *to children*." 2009-NMSC-035, ¶ 37 (emphasis added). *Chavez* also held that no crime was committed when "the [s]tate failed to present any specific evidence to establish a substantial and foreseeable risk that the children would suffer serious [injury] as a result" of the defendant's risk-creating conduct. *Id.* ¶ 39.

**{25}** In this case, Defendant may have acted with criminal negligence in driving drunk, but she did not act with reckless disregard in relation to the safety or health of the children specifically. The "should have known standard" of criminal negligence is consistent with the requirement that the defendant has "disregarded [the] risk and [has been] wholly indifferent to the consequences." *Schoonmaker*, 2008-NMSC-010, ¶ 45 (alterations in original) (internal quotation marks and citation omitted). Our case law establishes that the consequences of the defendant's actions must be specifically directed at children in the case of child abuse. In *Clemonts*, we stated that endangerment of children cannot be predicated on a child's mere proximity to a dangerous situation, but rather that the defendant's actions must place the child who is endangered "in the direct line of any danger" so as to create more than a "mere possibility of harm." 2006-NMCA-031, ¶ 16; *see Trossman*, 2009-NMSC-034, ¶ 20. In other words, the crime is committed when "a defendant places a child within the zone of danger and physically close to an inherently dangerous situation." *Id.* We

conclude that the risk and the consequences of risky conduct are those required to be directed at or sufficiently close to the alleged victim of the abuse. *See id.* ¶ 21 (concluding that precedent requires "the [s]tate to prove the child's presence in a situation where harm was both probable and sufficiently grave to justify a criminal sanction").

{26}     The fact that the behavior creating a risk results in the injury of a child is not dispositive to the analysis. As our Supreme Court observed in *Schoonmaker*, it is almost impossible to be indifferent to or disregard a risk of which one is not aware. 2008-NMSC-010, ¶ 45. As such, negligent child abuse is no accident. *Garcia*, 2010-NMSC-023, ¶ 35 (explaining that referring to an act of negligent child abuse as an "accident" is "a clear misstatement of the law" (internal quotation marks and citation omitted)). The incidental injury of a child caused by criminally negligent behavior toward the public at large was not contemplated by the Legislature to be criminalized by this statute. Yet, the State has staked out the contrary position that the resulting injury determines the crime and not the antecedent conduct.

{27}     In this case, the facts establish the accidental nature of the harm to the children. Defendant's reckless behavior endangered all persons on the road, but nothing about the situation gives rise to evidence that the children were subjected to any particular danger not shared by all fellow motorists and their passengers. Defendant did not specifically act in a criminally negligent manner with regard to endangering these particular children. Rather, she acted that way toward people of all ages on the road that night.

{28}     The State acknowledges the nature of endangerment as proceeding the harm when it points out that Defendant did not know if she would crash into another vehicle, injure another person, or cause no injury at all. The State stated, "Defendant did not know what penalty she was facing until the results were seen." This is an incorrect standard to apply. Under the State's logic, the occurrence of child abuse depends completely upon the incidental age of the injured party and not upon any culpable state of mind of the defendant. Such logic imposes criminal liability irrespective of how remote the risk of injury is to a child. To adopt this view does not allow consideration of whether Defendant can assess the potential occurrence of "a substantial and foreseeable risk" of harm to the children. *Chavez*, 2009-NMSC-035, ¶ 22 (emphasis omitted) (internal quotation marks and citation omitted); *see* UJI 14-604 NMRA. Rather, it concentrates on the ultimate consequence of the behavior, which is uncertain at the time as to the result the risk may produce.

{29}     More specifically, to operate under the State's view offends the requirement that a defendant be cognizant that his or her behavior creates a specific danger to a particular child. This approach creates a strict liability crime based on the victim's age and the resultant injury, not the defendant's culpability in creating antecedent and child-directed danger. Such an application of the statute is improper. Conviction of a defendant for negligent child abuse by endangerment requires a demonstration of some risk to a child specifically, as opposed to a general risk to the public with an accidental harm resulting to a child.

9

**{30}** "Typically, criminal liability is premised upon a defendant's culpable conduct, the *actus reus*, coupled with a defendant's culpable mental state, the *mens rea*." *State v. Padilla*, 2008-NMSC-006, ¶ 12, 143 N.M. 310, 176 P.3d 299. Even if Defendant commits an act that endangers a child, the State cannot prove child abuse by endangerment unless Defendant's culpable mental state coincided with the act. Defendant must be criminally negligent in placing the child in the direct line of, or at least close to, the danger by recklessly disregarding the substantial and unjustifiable risk to the child's life and health. As stated above, this mental state requires that Defendant know, or at least should know, that her conduct is endangering a child. The fact that a child was incidentally affected by Defendant's conduct, even if she knew, or should have known, that she was endangering the public, is insufficient to prove the mens rea for negligent child abuse.

**{31}** Where the risk of an injury is apparent or of a great magnitude, the statute requires that we ask to what extent the circumstances are a particular risk to children. Consequently, we hold that for a person to be guilty of child abuse by endangerment, it must be shown that he or she engaged in conduct that directs the risk at a child in a manner that is foreseeable and is likely to produce endangerment to the particular child. We interpret the plain meaning of "negligence" in Section 30-6-1(D)(1) to require the State to prove that Defendant knew, or should have known, of the foreseeable risk created by her behavior that threatens a child's life or health. Because a drunk driver creates the possibility of a risk to all persons on the road, it is insufficient for the State to prove a substantial and foreseeable risk by simply establishing that the possibility exists that a hypothetical child will be injured thereby, or that a child was actually injured as a result of the defendant's acts, even though that child was not known to be endangered at the time. The risk of harm to the child must be perceived separately from a risk to the public as a whole, so that the defendant actively disregarded the likelihood of injury to a child.

**{32}** The State failed to prove that Defendant's behavior endangered a particular child that was foreseeable at the time of the accident. As a result, Defendant's conviction must be reversed. In addition, the jury hung and did not return a verdict on the intentional child abuse charges. Based on the facts of this case and this Court's reversal of the conviction for the lesser-included offenses of negligent child abuse, the evidence is also insufficient to convict Defendant on the more severe charge of intentional child abuse. Intentional child abuse also requires that the facts demonstrate that Defendant endangered a particular child that was foreseeable at the time of the accident. Absent such facts, as conceded by the State in this case, the charge of intentional child abuse by endangerment must also be dismissed as insufficient as a matter of law. *State v. Reed*, 1998-NMSC-030, ¶¶ 18-19, 125 N.M. 552, 964 P.2d 113 (holding that the defendant's cocaine possession charge must be dismissed because there was insufficient evidence to prove he had the requisite knowledge to commit the crime).

**D.    Double Jeopardy**

**{33}** As a final matter, Defendant argues that if this Court reverses her conviction, the doctrine of double jeopardy prohibits the State from prosecuting her for vehicular homicide. As double jeopardy applies where Defendant challenges her convictions for sufficiency of the evidence and she has successfully done so with regard to negligent child abuse here, we now review Defendant's double jeopardy contentions. *See State v. Lynch*, 2003-NMSC-020, ¶ 11, 134 N.M. 139, 74 P.3d 73. We hold that double jeopardy precludes the State from prosecuting Defendant for vehicular homicide.

**{34}** The Double Jeopardy Clause represents three broad guarantees. First, when a defendant has been acquitted of an offense, the clause guarantees freedom from subsequent prosecution for the same offense. Second, the double jeopardy clause guarantees freedom from prosecution for the same offense after conviction. Third, it guarantees a defendant will not be punished twice for the same offense. *Id.* ¶ 9; *see* U.S. Const. amend. V ("No person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb[.]"); N.M. Const. art. II, § 15 ("No person shall be . . . twice put in jeopardy for the same offense[.]"); § 30-1-10 ("No person shall be twice put in jeopardy for the same crime [and] he may not again be tried for a crime or degree of the crime greater than the one of which he was originally convicted."). In *Lynch*, our Supreme Court held:

> [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

2003-NMSC-020, ¶ 9 (internal quotation marks and citation omitted). Where a defendant successfully challenges his or her conviction on some basis "other than insufficiency of the evidence[,]" double jeopardy does not apply. *Id.* ¶ 11. As stated above, because we hold that the State's evidence was insufficient to support a conviction for negligent child abuse, we consider the double jeopardy issue.

**{35}** For double jeopardy purposes, a greater offense is considered the same offense as any lesser offenses included therein. *See id.* ¶ 1 (holding that double jeopardy barred the state from prosecuting a defendant for first-degree murder after his acquittal for second-degree murder for the same killing). "The Double Jeopardy Clause prohibits successive prosecutions for two offenses arising out of the same conduct if either one is a lesser-included offense within the other." *State v. Meadors*, 121 N.M. 38, 41, 908 P.2d 731, 734 (1995). The strict elements test provides the most straightforward answer on whether a specific offense constitutes a lesser-included offense of another. *Id.* at 42, 908 P.2d at 735. Under this approach, courts must determine whether an offense is "sub-set of the statutory elements of the greater offense such that it would be impossible ever to commit the greater offense without also committing the lesser offense." *Id.* While New Mexico observes this standard as a baseline, our state also employs a more flexible "cognate" approach, which provides that a specific offense constitutes a lesser-included offense if "the evidence adduced

at trial is sufficient to sustain a conviction on the lesser offense[] and . . . the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser." *Id.* at 44, 908 P.2d at 737; *see State v. Tanton*, 88 N.M. 333, 335, 540 P.2d 813, 815 (1975) (describing the same evidence test); *Swafford v. State*, 112 N.M. 3, 10, 810 P.2d 1223, 1230 (1991) (explaining the same evidence test).

{36}    Applying the cognate approach announced in *Meadors*, we hold that, under the unique facts of this case, any subsequent prosecution of Defendant for vehicular homicide would be prohibited as a lesser-included offense under double jeopardy. 121 N.M. at 44, 908 P.2d at 737. Defendant was convicted of negligent child abuse resulting in death in violation of Section 30-6-1(D)(1), which prohibits negligently causing a child to be placed in a situation that may endanger that child's life or health. The offense of vehicular homicide, of which the State chose not to charge Defendant, prohibits killing or seriously injuring another person with a vehicle while under the influence of intoxicating liquor. Section 66-8-101. These two statutes clearly describe separate offenses under the strict elements test. *See Meadors*, 121 N.M. at 42, 908 P.2d at 735. Yet, under the cognate approach, vehicular homicide constitutes a lesser-included offense of negligent child abuse on these facts. *See Santillanes*, 2001-NMSC-018, ¶ 37 (holding "that vehicular homicide is a lesser offense than child abuse resulting in death . . . [b]ecause the Legislature did not intend to create separately punishable offenses" under those statutes for the same death).

{37}    As stated above, during trial, the State presented evidence that Defendant drank to intoxication and drove her vehicle in such a manner that she negligently caused the death of one child and injured another. The crux of the parties' dispute at trial, and indeed this appeal, was whether such evidence was sufficient to convict Defendant of negligent child abuse, particularly in light of the fact that the State presented little evidence suggesting Defendant appreciated any risk that her actions posed any harm to a specific child victim. Had the jury been instructed on vehicular homicide, it could have reasonably concluded that Defendant was guilty of that offense instead of negligent child abuse. Moreover, Defendant's awareness that her actions imperiled a specific child was sufficiently in dispute, so as to reasonably lead to acquittal on the negligent child abuse charge, had the jury received a vehicular homicide instruction.

{38}    Accordingly, we hold that any subsequent prosecution for vehicular homicide in this case would violate double jeopardy. The State chose an "all or nothing" strategy that excluded vehicular homicide. *See State v. Villa*, 2004-NMSC-031, ¶ 14, 136 N.M. 367, 98 P.3d 1017 (discussing the consequences of an "all-or-nothing" trial strategy). As our courts have stated many times, the parties "should be liable for the risks of their respective trial strategies." *Id*. To do otherwise would be to violate the very essence of fairness at the core of the Double Jeopardy Clause.

## IV.    CONCLUSION

**{39}** For Defendant to be convicted of child abuse, the State must show that she specifically directed her criminally negligent conduct toward children, particularly toward Manuel and Deandre, in such a way that is distinguishable from the danger she posed to the public at large. Furthermore, double jeopardy bars retrial of Defendant for vehicular homicide. Thus, we reverse and remand for vacation of the child abuse convictions, for amendment of the judgment and sentence to reflect those charges on which Defendant's convictions remain unaffected by this opinion, and for discharge of Defendant.

**{40}   IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *State v. Gonzales*, Docket No. 28,700**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DJ | Double Jeopardy |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CN | Child Abuse and Neglect |
| CL-CM | Criminal Negligence |
| CL-DG | Driving While Intoxicated |
| CL-VH | Vehicular Homicide |