Certiorari Denied, February 7, 2013, No. 33,983

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-027**

**Filing Date: December 12, 2012**

**Docket No. 31,577**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**HARLA WEBB,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen L. Parsons, District Judge**

Gary K. King, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM
Sri Mullis, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**GARCIA, Judge.**

**{1}**    Defendant Harla Webb signed the written consent form to allow a piercing to occur on a minor without obtaining authorization or permission from the minor's parent or legal guardian. Though the piercing was successful, the minor sustained serious injuries as a

1

result of an accidental fall in the tattoo parlor. Defendant appeals her convictions for child abuse by endangerment without great bodily harm and contributing to the delinquency of a minor. We affirm Defendant's conviction for contributing to the delinquency of a minor but reverse her conviction for child abuse by endangerment because the State did not present sufficient evidence from which the jury could find that Defendant's conduct created a substantial and foreseeable risk of harm.

**BACKGROUND**

**{2}** On May 20, 2009, Defendant picked up her daughter, Steffanie, and two of her daughter's friends, including fifteen-year-old Nicole, from Ruidoso Middle School. Defendant and Nicole were not related and had never previously met. Steffanie and Nicole had arranged for Nicole to be picked up by Defendant because Steffanie was going to get her belly button pierced and Nicole wanted to get her tongue pierced.

**{3}** Defendant drove the girls to Tre's Tattoo Studio in Ruidoso. Nicole told Defendant that her mother, Jennifer "Michelle" Pino, had given her permission to have her tongue pierced, but this was not true. Nicole had sufficient cash to pay for the piercing, which Defendant believed meant that Nicole's mother had given her permission. Defendant did not contact Nicole's mother.

**{4}** When they arrived at Tre's Tattoo Studio, the owner, Joe "Tre" Garcia, provided Steffanie and Nicole with a piercing record and release form (Release Form). Nicole completed the top portion of the Release Form, providing her name, contact information, age, and date of birth. She indicated that she did not have any allergies, history of bleeding, or blood borne irregularities. In accordance with New Mexico law, 16.36.5.11 NMAC (5/16/2008), the Release Form required a parent or legal guardian to consent to a minor's piercing. The Release Form states:

> A person may not perform a piercing on a minor without the consent of the
> minor's parent or legal guardian, and an establishment may not perform a
> piercing on a minor under the age of 18 unless the minor is accompanied by
> a (Parent or Legal Guardian). I authorize the piercing described to be
> performed on my child.

Defendant printed her name and signed as Nicole's parent or legal guardian.

**{5}** There was conflicting testimony surrounding Defendant's act of signing Nicole's Release Form. Garcia testified that he asked Defendant whether Steffanie and Nicole were her daughters and Defendant answered, "Yes." He said that if Defendant had told him that she was not related to Nicole, he would not have performed the piercing. Defendant testified that she did not present herself as Nicole's mother or guardian. She said she signed the Release Form because Garcia told her to sign it and she "didn't think it was that big of a deal."

2

**{6}** Nicole received a tongue piercing without complications. She then sat on a chair to watch Steffanie receive her piercing. Before Steffanie received her piercing, Nicole passed out and hit the tile floor face first. She was unconscious for approximately ten to fifteen seconds. When she woke up, she looked in the mirror and saw blood "gushing everywhere." She noticed one of her teeth was missing and two were damaged. She had bruising on her face and body and was "in a lot of pain."

**{7}** Nicole testified that Defendant did not offer to call 911 or take her to the hospital. Garcia testified that Defendant did not try to help Nicole in any way and told Garcia that it was a good thing she was taking Nicole to the dentist the next day. Defendant testified that she wanted to call 911 or take Nicole to the hospital but Nicole said she was okay. Defendant testified that Nicole appeared to have "a couple chipped teeth" but "seemed fine."

**{8}** Defendant left the tattoo parlor with the children and drove Nicole home. When they arrived at Nicole's house, Steffanie walked Nicole to her front door but did not go inside. Defendant did not exit the car and did not inform anyone about the piercing or the accident. Nicole told her mother's boyfriend that she fell down. When Nicole's mother arrived home from work, she observed bruises on Nicole's face and damage to Nicole's mouth and teeth. Nicole told her mother she had passed out after school. Nicole's mother made an emergency dental appointment for the next morning. Later that night, Nicole told her mother the truth about her fall and the piercing. Nicole's mother called Steffanie's cell phone and asked to speak to Defendant. Defendant did not come to the phone and did not return the phone call.

**{9}** On May 21, Nicole's mother took Nicole to a dentist in Alamogordo. The damage to Nicole's teeth was more extensive than anyone suspected. As of October 2011, Nicole had received three root canals and four sets of temporary teeth and still needed additional treatment. She received penicillin during the course of her treatment and discovered, for the first time, that she was allergic to the drug. Because she missed so many days of school, Nicole was forced to drop out and, at the time of the trial, was working to obtain her GED. She testified her mouth was "always in pain."

**{10}** Garcia was the only witness who testified about the risks of tongue piercing. He testified as follows:

> Q:     Now, are there any risks involved?
>
> A:     Not really. It's rare that . . . you hear a lot of . . . people . . . say that you'll hit a vein. You won't. Your veins run on the side of your tongue. In the rare occasion, every one in 100, one in 150, has that vein in the middle and you can't do it.
>
> Q:     Okay. What about for infections and things of that nature? Is there a risk?

3

A:      We tell you how to take care of it . . . .  If you don't take care of it, it's gonna get infected, like anything else.

Q:      So, . . . so you're saying, there is a risk?

A:      Oh, yes, ma'am.  There's a risk with anything, with an ear piercing, a tattoo, . . . eyebrow piercing, a tongue piercing, all of it.

Q:      Okay.  Alright, so are there any other types of risk involved?

A:      Just infection.  Infection is the main risk.

He testified that in his approximately twenty years of doing piercings, he had never seen someone faint from a piercing before Nicole.

**{11}** Defendant was charged by way of criminal information with three counts:  (1) abandonment of a child resulting in great bodily harm; (2) forgery; and (3) contributing to the delinquency of a minor (CDM).  The State filed a *nolle prosequi* on the forgery count prior to trial.  A jury trial was held on November 18, 2010.  Defense counsel moved for a directed verdict at the close of the State's case.  The district court denied the motion.  Defense counsel renewed the motion at the close of the evidence and the court again denied the motion.

**{12}** The jury was instructed on child abuse with and without great bodily harm.  To find Defendant guilty of child abuse without great bodily harm, the State had to prove beyond a reasonable doubt, *inter alia*:

1.    [Defendant] caused Nicole . . . to be placed in a situation which endangered the life or health of Nicole;

2.    [D]efendant acted with reckless disregard and without justification. To find that [Defendant] acted with reckless disregard, you must find that . . . [D]efendant knew or should have known [D]efendant's conduct created a substantial and foreseeable risk, . . . [D]efendant disregarded that risk and [D]efendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of Nicole [.]

**{13}** The jury was instructed that, to find Defendant guilty of CDM, the State had to prove beyond a reasonable doubt, *inter alia*:

1.    [D]efendant took the child to have a piercing and signed the consent for the procedure without conferring with [Nicole's] parent and/or . . . [D]efendant did not seek medical treatment for the child and/or notify [Nicole's] parent of [Nicole's] injuries.

2.     This caused and/or encouraged Nicole . . . to refuse to obey the reasonable and lawful commands or directions of her parent a person who had lawful authority over Nicole . . . [OR] conduct herself in a manner injurious to her morals and/or health and/or welfare of Nicole.

The jury found Defendant guilty of child abuse without great bodily harm and CDM.

**DISCUSSION**

**{14}**     On appeal, Defendant challenges the sufficiency of the evidence to support her conviction. "[O]ur review for sufficiency of the evidence is deferential to the jury's findings." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057. We review direct and circumstantial evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted). We must, however, scrutinize "the evidence and supervision of the jury's fact-finding function to ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**A.     Child Abuse by Endangerment**

**{15}**     Defendant was convicted of child abuse by endangerment pursuant to NMSA 1978, Section 30-6-1(D)(1) (2009), which defines the offense as "knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health[.]" "[T]he legislative purpose that animates [this] statute [is] to punish conduct that creates a truly significant risk of serious harm to children[,]" it "would be reserved for the most serious occurrences, not for minor or theoretical dangers." *State v. Chavez*, 2009-NMSC-035, ¶¶ 16, 22, 146 N.M. 434, 211 P.3d 891. Prior to *Chavez*, we reviewed convictions under this statute to determine whether the State had proved the defendant's conduct created a "reasonable probability or possibility" of endangerment. *Id.* ¶¶ 16, 17 (internal quotation marks and citation omitted). In *Chavez*, the Supreme Court rejected this test and held that, to support a conviction, the state must prove the defendant's conduct "created a substantial and foreseeable risk of harm." *Id.* ¶ 22 (emphasis, internal quotation marks, and citation omitted).

**{16}**     Since *Chavez*, we have upheld a conviction for child abuse by endangerment where a defendant, while intoxicated, drove a vehicle with his nine-year-old child as a passenger. *See State v. Orquiz*, 2012-NMCA-080, ¶ 8, 284 P.3d 418, *cert. granted*, 2012-NMCERT-___, ___ P.3d ___, (No. 33,677, Aug. 3, 2012). We have also upheld a conviction for child abuse by endangerment where a reasonable jury could have found a defendant was aware that her son was being abused by her boyfriend and continued to leave her son in the boyfriend's care, ultimately resulting in her son's death by abuse. *State v. Vasquez*, 2010-NMCA-041, ¶¶ 3, 21, 24, 148 N.M. 202, 232 P.3d 438.

**{17}** Defendant contends the State failed to present any evidence that her conduct created a substantial and foreseeable risk of harm to Nicole. The State argues that Defendant's conduct of signing the Release Form created a substantial and foreseeable risk of harm to Nicole from the piercing itself and from the possibility of an infection. The State also argues that Defendant's lack of knowledge about the tongue piercing procedure and about Nicole's medical history, in particular her allergy to penicillin, created a substantial and foreseeable risk of harm to Nicole.

**{18}** We consider the following factors in analyzing whether a defendant's conduct supports criminal liability for child abuse by endangerment: "(1) the gravity of the risk created by the defendant, (2) whether the underlying conduct violates a statute, and (3) the likelihood of harm to the child." *State v. Gonzales*, 2011-NMCA-081, ¶ 17, 150 N.M. 494, 263 P.3d 271, *cert. granted*, 2011-NMCERT-008, 268 P.3d 514. While the likelihood that harm will occur is "no longer a determinative factor . . . it still remains an important consideration when evaluating the magnitude of the risk." *Id.* (internal quotation marks and citation omitted).

**{19}** Defendant provided written consent for Nicole to receive a tongue piercing. The State first argues the piercing itself constituted a substantial and foreseeable risk of harm from Defendant's conduct. While it was certainly foreseeable that Nicole would receive a piercing based on Defendant's act of signing the Release Form, we are not persuaded by the evidence presented in this case that piercing is the type of most serious occurrence from which our Legislature intended to protect children. In reaching this conclusion, we reject the State's argument that this case is analogous to the dangers identified in *State v. Graham*, 2005-NMSC-004, 137 N.M. 197, 109 P.3d 285.

**{20}** In *Graham*, our New Mexico Supreme Court held there was sufficient evidence to support the defendant's conviction for child abuse by endangerment where, during a lawful search of a house in which two infants were present, police officers found a marijuana roach on the living room floor and a marijuana bud in a crib. *Id.* ¶¶ 2, 15 (applying the less stringent test utilized before the standard was changed in the *Chavez* decision). The *Graham* Court explained: "Given the illegality of the [marijuana] and the Legislature's determination that the substance is particularly dangerous to minors, we believe it is within the jurors' experience to decide whether the amount of accessible marijuana endangered the health of [the young children]." *Id.* ¶ 12. Unlike marijuana, body piercing is not illegal. The State directs us to Subsection (C)(7) of Regulation 16.36.5.11 of the Administrative Code, which requires body art establishments to maintain written proof of the presence and consent of a parent or legal guardian for procedures performed on clients who are minors. This suggests, at most, that body piercing is an adult activity unless consent is provided. It does not suggest that piercing, in and of itself, is illegal or presents a foreseeable risk of serious harm to children. As such, *Graham* is inapposite and applied a standard for foreseeable endangerment that is no longer utilized by our courts.

**{21}** The State next argues that infection was a substantial and foreseeable risk of harm

6

from Defendant's conduct. While the State may have attempted to establish that infection constituted a substantial risk, it failed to do so based upon the evidence presented in this case. The only witness who testified regarding the risk of infection was Garcia, the owner of the tattoo parlor. Garcia testified that "[i]nfection is the main risk" of tongue piercing but he did not quantify the risk in any way and, in fact, seemed to minimize it. Even assuming that the level of risk from post-piercing infection could be established with empirical or scientific evidence, there was no such evidence here.

**{22}** The State also argues that Defendant's conduct supports criminal liability because Defendant lacked knowledge about tongue piercing and about Nicole's medical history, in particular, her allergy to penicillin. We are not persuaded. Defendant did not perform the piercing; rather, she signed the consent form allowing Nicole to be pierced by Garcia. Whether Defendant's actions endangered Nicole's life or health within the meaning of the statute does not depend on Defendant's knowledge of tongue piercing. The evidence established that Garcia had sufficient knowledge and experience to perform this type of piercing. As for the allergy, at the time Nicole received the piercing, neither Nicole nor her mother knew that Nicole was allergic to penicillin. The child endangerment statute "evinces a legislative intent to use the concept of criminal negligence . . . as the standard for negligent child abuse." *State v. Schoonmaker*, 2008-NMSC-010, ¶ 44, 143 N.M. 373, 176 P.3d 1105. In order to be criminally negligent, a defendant need not be subjectively aware of a risk, but the risk must be one of which "'he should be aware.'" *Id.* ¶ 43 (emphasis omitted) (quoting Model Penal Code § 2.02(c) (Official Draft and Revised Comments 1962)). "The risk must be of such a nature and degree that the actor's failure to perceive it, . . . involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." *Id.* (emphasis omitted). No one could have foreseen that Nicole would have or develop an allergy to penicillin, which would complicate her treatment. Defendant cannot be convicted for child abuse for failing to perceive a risk to Nicole of which nobody was aware.

**{23}** The State did not present sufficient evidence from which a jury could find that Defendant's conduct created a substantial and foreseeable risk of serious harm to Nicole. As we explained in *Gonzales*, "it is the endangerment and not the resulting injury that constitutes the offense[.]" 2011-NMCA-081, ¶ 20. Thus, to support liability, "there must be an actual or imputed foreseeability of danger directed toward the children who might be injured as a result of Defendant's acts." *Id.* There was no such foreseeability of serious injury established in this case. Accordingly, we reverse Defendant's conviction for child abuse by endangerment.

**B.      Contributing to the Delinquency of a Minor**

**{24}** Defendant was also convicted of CDM pursuant to NMSA 1978, Section 30-6-3 (1990), which defines the offense as "committing any act or omitting the performance of any duty, which act or omission causes or tends to cause or encourage the delinquency of any person under the age of eighteen years." Defendant contends there was insufficient evidence

7

to show that she "cause[d] and/or encourage[d] Nicole to deceive her mother." We disagree.

**{25}** In *State v. Dietrich*, we rejected the defendant's argument that there was insufficient evidence to support his conviction for CDM because the minor, an admitted heroin user, never testified that the defendant encouraged him to use alcohol or drugs. 2009-NMCA-031, ¶¶ 56, 61, 145 N.M. 733, 204 P.3d 748. We held that the minor's testimony that the defendant "provided and purchased drugs and alcohol for [the minor] satisfies the element of causing [the minor] to engage in underage drinking/drug use whether or not [the d]efendant encouraged such use." *Id.* ¶ 61 (alteration, internal quotation marks omitted). Similarly here, the jury could find that Defendant's act of transporting Nicole to the tattoo parlor and signing the Release Form caused or encouraged Nicole to deceive her mother by obtaining a piercing without permission even though Defendant did not actively encourage the piercing.

**{26}** "The purpose of the CDM statute is to protect children from harmful adult conduct." *State v. Barr*, 1999-NMCA-081, ¶ 17, 127 N.M. 504, 984 P.2d 185 (internal quotation marks and citation omitted); *see also State v. Pitts*, 103 N.M. 778, 780, 714 P.2d 582, 584 (1986) ("[T]he intent of the Legislature in enacting Section 30-6-3 . . . was to extend the broadest possible protection to children, who may be led astray in innumerable ways."). Our New Mexico Supreme Court has "consistently rejected narrow constructions of the statute that would limit its usefulness in protecting children." *Pitts*, 103 N.M. at 780, 714 P.2d at 584. "We always have relied on juries to determine what acts constitute contributing to delinquency in a particular case." *State v. Trevino*, 116 N.M. 528, 531, 865 P.2d 1172, 1175 (1993).

**{27}** Even though Nicole told Defendant that her mother had given her permission for a tongue piercing, it was for the jury to determine whether Defendant's failure to confirm this with Nicole's mother or require Nicole's mother to sign the Release Form was reasonable under the circumstances. *See State v. Romero*, 2000-NMCA-029, ¶ 31, 128 N.M. 806, 999 P.2d 1038 ("[W]here the State seeks to convict a defendant of CDM for causing or encouraging a minor to refuse to obey the reasonable and lawful command or direction of the minor's parent . . . the State must prove . . . that the defendant knew or by the exercise of reasonable care should have known of such command or direction."). The State introduced sufficient evidence from which the jury could find that Defendant knew or should have known that Nicole's mother had not consented to the piercing. Defendant testified that she believed Nicole had her mother's permission because she had sufficient cash to pay for the piercing, but it was for the jury to determine whether this was reasonable. Defendant did not contact Nicole's mother, or any other member of Nicole's family, even after the accident. The jury could have inferred from this conduct that Defendant knew she had acted without permission. Accordingly, we conclude there was sufficient evidence to support Defendant's conviction for CDM.

**CONCLUSION**

8

**{28}** We affirm Defendant's conviction for contributing to the delinquency of a minor. Because we conclude the evidence was insufficient to support Defendant's conviction for child abuse by endangerment, we reverse Defendant's conviction on that count and remand for further proceedings consistent with this Opinion.

**{29}   IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for _State v. Webb_, No. 31,577**

**APPEAL AND ERROR**
Substantial or Sufficient Evidence

**CRIMINAL LAW**
Child Abuse and Neglect
Contributing to the Delinquency of a Minor