634 P.2d 1

**The STATE of Arizona, Appellee,**

v.

**Charlene Ann SMITH and Evalee Smith, Appellants.**

**Nos. 2 CA–CR 2214, 2 CA–CR 2226.**

Court of Appeals of Arizona, Division 2.

June 16, 1981.

Rehearing Denied Sept. 2, 1981.

Review Denied Sept. 22, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

David M. Gerson, Tucson, for appellant Charlene Smith.

Robert G. Benedict, Tucson, for appellant Evalee Smith.

## OPINION

HOWARD, Judge.

Appellants were convicted by a jury of child abuse in violation of A.R.S. § 13–3623(C)(2). Their sentences were suspended by the trial court and they were placed on probation for three years.

On September 21, 1979, Detective Jorgenson of the Tucson Police Department received a telephone call from David Gibbs, a case worker with Child Protective Services, concerning a home environment which posed a health hazard to five children, ranging in age from one month to 12 years, who were living there.

Jorgenson and Gibbs met at the house and after knocking, they were greeted by Mrs. Jessica Smith, one of the two adult occupants. While standing in the doorway, Detective Jorgenson noticed an infant lying on the couch in the living room and a strong odor coming from inside the house. After gaining entry, Detective Jorgenson saw that the living room was filthy, unsanitary and in shambles. He walked into the kitchen and found spoiled food, a large number of flies, dead roaches and other unsanitary conditions. Detective Jorgenson, feeling that there was probable cause to remove the children, called for an identification unit to take photographs of the residence. He then went through the rest of the house and found the same type of filth.

The identification unit arrived shortly thereafter and while photographs were being taken of the inside of the house, Detective Jorgenson tried to explain to appellants why he had to remove the infant and the other children to a child crisis center. After this discussion with the adult occupants, the infant was taken from the home.

Appellants contend (1) that the trial court erred in denying their motion to suppress the photographs taken by the identification unit and the oral testimony concerning the condition of the house which was discovered after Detective Jorgenson decided there was probable cause to remove the infant; (2) that the trial court erred in denying their motion to dismiss based upon the unconstitutionality of A.R.S. § 13–3623(C)(2); and (3) that the trial court erred in admitting into evidence photographs and testimony concerning a 1978 investigation of the home. We affirm.

Appellants do not question that Mr. Gibbs and Detective Jorgenson had the right to enter the premises and take the infant into temporary custody. See A.R.S. § 8–223(A)(3); *State v. Hunt,* 2 Ariz.App. 6, 406 P.2d 208 (1965). Their position, however, is that as soon as Detective Jorgenson saw the infant lying there and saw the unsanitary conditions that he should have merely removed the infant and conducted no further investigation. We do not agree. Since Detective Jorgenson had been informed that there were five children on the premises, he had the right to go through the house and look for the other children and anything that he saw in plain view was not a search.

Since Detective Jorgenson's entry into the house was lawful, the later entry of the police photographer was also lawful. See *State v. Anderson,* 15 Ariz.App. 464, 489 P.2d 722 (1971). The purpose of the entry of the police photographer was to photographically preserve the scene prior to the removal of the children and to prevent accidental or intentional destruction of evidence. No search warrant was needed for him to remain on the premises for these purposes. See *State v. Anderson,* 42 Or. App. 29, 599 P.2d 1225 (1979), cert. den. 446 U.S. 920, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980). The officers photographed only what was in plain view. They conducted no search beyond what was visible and because they were lawfully on the premises they could photograph anything in plain view. Id. The camera only preserved what the eye could readily see, and the eye can com-

mit no trespass. *State v. Taylor*, 217 Kan. 706, 538 P.2d 1375 (1965).[1]

A.R.S. § 13–3623, under which appellants were convicted, states that:

"Under circumstances other than those likely to produce death or serious injury to a child, any person who causes a child to suffer physical injury or abuse as defined in § 8–546, subsection A, paragraph 2, or, having the care or custody of such child, causes or permits the person or health of such child to be injured or causes or permits such child to be placed in a situation where its person or health is endangered is guilty of an offense as follows:

\*　　\*　　\*　　\*　　\*　　\*

2. If done recklessly, the offense is a class 5 felony."

 Appellants point to the definition of the word "abuse" in A.R.S. § 8–546(A)(2) which is referred to in the above statute and argues that the definition is unconstitutionally vague. We need not decide this issue since the state's theory was not that appellants caused one of the children to suffer physical injury or abuse as defined in A.R.S. § 8–546(A)(2) but was that appellants were guilty of causing or permitting the child to be placed in a situation where its health was endangered. A person may not urge the unconstitutionality of a statute unless he is harmfully affected by the application to him of the particular feature of the statute alleged to be violative of the constitution. *State v. Varela*, 120 Ariz. 596, 587 P.2d 1173 (1978). Since appellants were not harmfully affected by the statute defining abuse, we do not consider their argument.

Appellants contend that the trial court erred in admitting evidence, including testimony and pictures concerning an incident in 1978 when the children had to be removed from the Smith home due to unsanitary conditions. We do not agree. The state had to prove that appellants acted

recklessly. A.R.S. § 13–105(5)(c) provides, in part, the following definition of the term "recklessly":

" 'Recklessly' means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur and that the circumstances exist."

Rule 404(b) of the Arizona Rules of Evidence provides that evidence of other crimes, wrongs or acts is admissible to show, inter alia, intent, knowledge, and absence of mistake or accident. The evidence, therefore, was admissible under the foregoing rule to show knowledge, intent and absence of mistake or accident.

Affirmed.

HATHAWAY, C. J., and BIRDSALL, J., concur.

---

1. The facts here are distinguishable from those in *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) where the police spent four days after a shooting making a warrantless search of the premises.