2006-NMSC-045

143 P.3d 178

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Kevin JENSEN, Defendant–Respondent.**

**No. 29,528.**

Supreme Court of New Mexico.

Aug. 29, 2006.

Revised Sept. 25, 2006.

417

Patricia A. Madrid, Attorney General, Martha Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Petitioner.

John Bigelow, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

**OPINION**

CHÁVEZ, Justice.

{1} Everyday for at least two weeks at the home of Defendant Kevin Jensen, fifteen-year-old Robbie Stroup got drunk on liquor supplied by Defendant while viewing pornographic websites on Defendant's computer. Defendant's home was filthy and filled with animal feces, rodent droppings, and rotten food in the refrigerator. Defendant was tried on two counts of contributing to the delinquency of a minor, contrary to NMSA 1978, § 30–6–3 (1990), and one count of child abuse by endangerment, contrary to NMSA 1978, § 30–6–1(D)(1) (2001, prior to 2004 amendment). A jury convicted him on all counts. Defendant appealed to the Court of Appeals, challenging only his child abuse conviction and arguing that no rational jury could have found his conduct created a reasonable probability or possibility that Robbie's health would be endangered.

{2} The Court of Appeals wrote a comprehensive opinion summarizing New Mexico law on child endangerment. The Court of Appeals interpreted this Court's recent opinion in *State v. Graham*, 2005–NMSC–004, 137 N.M. 197, 109 P.3d 285, as injecting an inquiry into the "child's susceptibility to harm." *State v. Jensen*, 2005–NMCA–140, ¶ 16, 138 N.M. 647, 124 P.3d 1186. The Court of Appeals reversed Defendant's conviction, concluding that the evidence "does not portray a defenseless child too young to protect himself." *Jensen*, 2005–NMCA–140, ¶ 22, 138 N.M. 647, 124 P.3d 1186. Because the Court of Appeals believed the fifteen-year-old could protect himself from the filthy and unsanitary conditions of Defendant's home by simply choosing not to go there, the Court of Appeals concluded the child was not endangered. *Id.* ¶ 22–24.

{3} We granted the State's petition for writ of certiorari and reverse the Court of Appeals. Although a child's susceptibility to harm is a factor a jury might consider when determining whether a defendant has committed child abuse, this factor alone is insufficient for a reviewing court to rule as a matter of law that Defendant did not cause the child to be in a situation that might endanger his health. We hold, viewing the evidence in the light most favorable to the prosecution, that a rational trier of fact could have found that the circumstances as a whole satisfied the essential elements of the crime of child abuse beyond a reasonable doubt.

## I. BACKGROUND

{4} Robbie Stroup, a fifteen-year-old boy from Moriarty, was reported missing on October 28, 2002. As part of her investigation, Chief Deputy Susan Encinias interviewed Robbie's mother at her home while Defendant was present. Chief Deputy Encinias learned that Robbie had been at Defendant's home the day before he was reported missing. Following the interview of Mrs. Stroup, Chief Deputy Encinias went with Defendant to his house located about five houses from the Stroups' residence for the purpose of interviewing Defendant. Before entering Defendant's home, several dogs had to be removed from inside. Chief Deputy Encinias testified as to the "totally horrible," "filthy," "nasty," and "terrible" conditions inside Defendant's home, which included dog feces and rodent droppings throughout the house. She also explained that an emu rushed at her upon opening a bedroom door in the house.

{5} On October 29, 2002, with Defendant's consent, Deputy Sheriff Milton Torrez searched Defendant's house. Deputy Sheriff Torrez testified that he had not seen a house "half as bad." In the living room area, there were dog feces, dog vomit on the floor, and rat and bird droppings in a cage. The entire kitchen area, including the stove, dishwasher, sink, and counter top, was dirty and littered with rodent droppings. The stove top burners, where Defendant cooked for Robbie, were also littered with rat droppings. The computer table that Robbie frequently used to surf the Internet was covered with trash and had rat or mouse droppings. Black rotten food was in the refrigerator next to some good hamburger meat. There was no place to sit at the dining room table without coming into contact with the extremely dirty conditions. The baseboards looked as though dogs had urinated on them, and the dirty bathroom had empty coke bottles and a filthy looking plastic soda pop jug with a

yellowish orange liquid in it. The entire house was littered with dust, papers, bottles, and animal waste that created a constant stench. In fact, an animal control officer who came to take Defendant's emu had to go outside to avoid vomiting from the smell.

{6} Robbie first met Defendant through his eighteen-year-old high school friend, Ben Wetherill. Robbie visited Defendant often. While at Defendant's house, Robbie would drink alcohol supplied by Defendant, smoke cigarettes, and look at adult pornographic sites on Defendant's computer. Ben testified that he and Robbie got drunk at Defendant's house every night for more than two weeks straight in October, 2002. Along with beer, Robbie and Ben drank Bacardi 101 and Wild Turkey. On one occasion, Robbie became sick from drinking too much and vomited on one of the dogs in the house.

{7} Defendant was charged with two counts of contributing to the delinquency of a minor and one count of child abuse for events which took place between August 1, 2002, and October 28, 2002. A jury convicted Defendant of one count of contributing to the delinquency of a minor, based on providing alcoholic beverages to Robbie; one count of contributing to the delinquency of a minor, based on providing Robbie with access to pornographic websites; and one count of child abuse by endangerment, based on placing Robbie in a situation that might have been dangerous to Robbie's health or life.

## II. DISCUSSION

{8} Defendant contends the evidence was insufficient to convict him of child abuse. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000–NMSC–009, ¶ 26, 128 N.M. 711, 998 P.2d 176. " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* ¶ 26 (quoting *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992)). We must not re-weigh the evidence or substitute our judgment for the judgment of the jury. *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988).

{9} In this case Defendant was charged with "knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health." § 30–6–1(D)(1). The jury was instructed, in relevant part, that the State had to prove the following beyond a reasonable doubt:

1. Kevin Jensen caused Robbie Stroup to be placed in a situation which endangered the life or health of Robbie Stroup;

2. The defendant acted with reckless disregard. To find that Kevin Jensen acted with reckless disregard, you must find that Kevin Jensen knew or should have known the defendant's conduct created a substantial and foreseeable risk, the defendant disregarded that risk and the defendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of Robbie Stroup.

3. Robbie Stroup was under the age of 18.

{10} Proof of child endangerment is sufficient for a conviction if a defendant places a child within the zone of danger and physically close to an inherently dangerous situation. *See State v. McGruder*, 1997–NMSC–023, ¶¶ 37–38, 123 N.M. 302, 940 P.2d 150 (child abuse conviction upheld where the defendant aimed a gun at and threatened to shoot a child's mother when the child was behind the mother, putting the child in a direct line of physical danger). Child abuse can also be found when the conduct creates indirect danger to a child. *See State v. Castaneda*, 2001–NMCA–052, ¶ 22, 130 N.M. 679, 30 P.3d 368 (child abuse conviction upheld where intoxicated mother drove recklessly on wrong side of highway while her children were riding unrestrained in the car, thus exposing the children to the possibility of danger). Although it is not necessary that the child actually suffer physical harm, "[t]here must be a reasonable probability or possibility that the child will be endangered."

*Graham*, 2005–NMSC–004, ¶ 9, 137 N.M. 197, 109 P.3d 285 (quoting *McGruder*, 1997–NMSC–023, ¶ 37, 123 N.M. 302, 940 P.2d 150) (internal quotation marks omitted).

{11} In reversing Defendant's conviction, the Court of Appeals interpreted this Court's holding in *Graham* as injecting another element into the endangerment inquiry, "namely, the child's susceptibility to harm." *Jensen*, 2005–NMCA–140, ¶ 16, 138 N.M. 647, 124 P.3d 1186. Because in *Graham* we described the children as "very young children" and quoted various precedents as referring to the Legislature's intent to protect "defenseless" children, the Court of Appeals interpreted our holding in *Graham* to require an inquiry into the child's "susceptibility to Defendant's offerings, his ability to protect himself, and his exposure to harm." *Id.* If the child has the capacity to protect himself from harm, the Court of Appeals concludes, the adult defendant in this case is not guilty of child endangerment. We disagree.

■ {12} In *Graham*, we upheld a conviction for child abuse when a father left marijuana in the immediate vicinity of his children and there was a reasonable probability or possibility that the children would come into contact with the controlled substance that could have endangered their health. 2005–NMSC–004, ¶ 14, 137 N.M. 197, 109 P.3d 285. We noted in that opinion that "[i]t is also common knowledge that the same amount of an intoxicant can have a more profound impact on infants and toddlers than on adults or even older children." *Id.* ¶ 12. As such, "[g]iven the illegality of the substance and the Legislature's determination that the substance is particularly dangerous to minors, we believe[d] it was within the jurors' experience to decide whether the amount of accessible marijuana endangered the health of a three-year-old child and a one-year-old child." *Id.* While age within the context of child endangerment inevitably will be considered by juries, age alone cannot provide the basis for a reviewing court to set aside a verdict of the jury. The Legislature has made it clear that child abuse applies to any child under the age of eighteen. *See* Section 30–6–1(A)(1) (defining "child" as a person less than eighteen years of age). The

focus of a reviewing court must continue to be on whether a defendant caused or permitted a child to be placed in a situation with a reasonable probability or possibility that the child's health or life may be endangered.

{13} Defendant focuses on the filthy conditions of the house and argues that the prosecution was only able to prove a speculative or mere possibility of endangerment to the child. The State points to cases in other jurisdictions where child abuse convictions were upheld based solely on exposing a child to filthy and unhealthy living conditions. *See State v. Piep*, 84 P.3d 850 (Utah Ct.App. 2004); *State v. Deskins*, 152 Ariz. 209, 731 P.2d 104 (1986); *State v. Smith*, 130 Ariz. 74, 634 P.2d 1 (1981). In *Piep*, for example, the Court of Appeals in Utah found that child abuse occurred when defendants placed children among living conditions that included: foul odors, rotten food, food on the floor, scattered clothing, evidence of human feces, and a substance seeping from the refrigerator. The conviction was upheld because such conditions endangered the health and welfare of the children. *Piep*, 84 P.3d at 853.

■ {14} In this case, regarding the filthy conditions, the State argues that the presence of rodent droppings throughout the home, including on the stove where Defendant cooked for the child, could have exposed the child to contracting hantavirus. We are not persuaded by this specific argument since the State did not put on evidence at trial to assist the jury with understanding whether the risk of contracting hantavirus was a reasonable probability or possibility. When filthy living conditions provide the exclusive basis for charging a defendant with child endangerment, the State must assist the trier of fact with evidence that supports a finding that there is a reasonable probability or possibility that such filthy conditions endangered the child.

{15} However, this case is not exclusively about filthy living conditions. The State argues that it was the combination of activities—providing the child with access to pornography and supplying alcohol to the child on a daily basis so the child could drink in excess while in a filthy environment—which prove child endangerment. As pointed out

by the State, the child was in fact harmed when he became so intoxicated that he vomited. Yet Defendant continued to supply alcohol to the fifteen-year-old, assuring the child's daily intoxication. This was not a situation where an adult occasionally supplied alcohol to a child. The evidence was that for at least two weeks Defendant supplied the child with alcohol, knowing the child was drinking in excess. While the Court of Appeals may be correct that the fifteen-year-old could have simply avoided the Defendant altogether, the child's failure to avoid Defendant does not exonerate Defendant as a matter of law. Conduct that includes supplying alcohol to this fifteen-year-old on a daily basis, cooking hamburger meat that was stored next to black rotten food in the refrigerator for the child, and cooking on a stove top littered with rodent droppings distinguishes this case from those cases where only filthy conditions are at issue.

{16} Finally, we believe a rational juror could find that Defendant knew or should have known that Robbie was in danger of becoming sick from daily intoxication with alcohol supplied by Defendant, consumption of food cooked on a stove littered with rodent droppings and eaten in an environment with animal feces scattered throughout, or a combination of these risks. "[W]here a jury verdict in a criminal case is supported by substantial evidence, the verdict will not be disturbed on appeal." *State v. Anaya*, 98 N.M. 211, 212, 647 P.2d 413, 414 (1982).

## III. CONCLUSION

{17} We conclude that the jury had sufficient evidence to convict Defendant of child abuse. We reverse the Court of Appeals and affirm the conviction.

{18} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and PETRA JIMENEZ MAES, Justices.