NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

PETER NORMANN, *Appellant*.

No. 1 CA-CR 17-0416
FILED 9-20-2018

Appeal from the Superior Court in Maricopa County
No. CR2009-006785-001
The Honorable Sherry K. Stephens, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Law Offices of Stephen L. Duncan, PLC, Scottsdale
By Stephen L. Duncan
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Randall M. Howe joined.

---

J O H N S E N, Judge:

¶1　　　　Peter Normann appeals his conviction of second-degree murder, a Class 1 felony.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2　　　　Normann, a licensed physician, opened his own medical clinic in 2005.[1]　Three patients died after suffering complications with cosmetic surgeries performed at Normann's clinic between 2016 and 2007. *See State v. Normann*, 1 CA-CR 11-0696, 2013 WL 4859655, at *1, ¶¶ 2-4 (Ariz. App. Sept. 12, 2013) (mem. decision).

¶3　　　　In 2009, the State charged Normann with two counts of second-degree murder, each a Class 1 felony, and one count of manslaughter, a Class 2 felony.  Counts 1 and 3 alleged Normann committed second-degree murder when, under circumstances "manifesting extreme indifference to human life," he recklessly engaged in conduct that created a grave risk of death and thereby caused the death of R.G. on December 12, 2006, and L.R. on or between July 3 and July 4, 2007.  Count 2 alleged Normann committed manslaughter when he recklessly caused the death of A.S. on April 25, 2007.

¶4　　　　The superior court denied Normann's motion to sever the three charges.  At trial, the State presented evidence that Normann recklessly caused each of the three deaths. *See Normann*, 1 CA-CR 11-0696, 2013 WL 4859655, at *1, ¶ 5.  The jury found Normann guilty as charged, and the court sentenced him to a total of 25 years' imprisonment.

¶5　　　　On appeal, Normann argued the superior court erred in denying his motion to sever. *Id.* at *1, ¶ 1.  We held the court erred in denying the motion to sever because there was no valid basis for the cross-

---

[1]　　We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

admissibility of evidence on all three charges. *Id*. at *6, ¶ 23. We further held the error was not harmless and vacated Normann's convictions and sentences. *Id*. at *6, ¶ 25.

¶6        On remand, the State elected to try the three charges separately and proceeded to trial first solely on Count 3 involving the third victim, L.R. The State gave notice before trial, however, that it would offer evidence of Normann's role in the deaths of R.G. and A.S., the first two victims, to establish Normann's mental state in causing the death of L.R., the final victim, under Rule 404(b) of the Arizona Rules of Evidence. Over Normann's objection, the superior court issued a detailed minute entry analyzing each of the six categories of acts the State intended to offer, and ruled it would allow evidence that, with respect to R.G. and A.S., Normann failed to: (1) properly administer medications and/or anesthesia, (2) properly monitor and intubate the victims, (3) properly equip and staff his clinic and (4) promptly contact 9-1-1.

¶7        At trial thereafter, witnesses testified that L.R. went to Normann's clinic for a liposuction procedure on July 3, 2007. Dr. Gary Page, licensed only in homeopathic medicine, performed the procedure and Normann assumed responsibility for L.R.'s post-operative recovery. Normann left L.R. alone in a procedure room without suitable hydration or monitoring and, when he returned, L.R. was no longer breathing. Normann then improperly intubated L.R., perforating her esophagus and forcing air into her chest and abdominal cavity. Normann delayed contacting 9-1-1 and, when paramedics arrived, did not inform them of the failed intubation. Medical experts testified that L.R. died of respiratory arrest caused by a complication with anesthesia and "free air" in the chest and abdominal cavities likely resulting from the perforation of her esophagus.

¶8        Pursuant to the superior court's pretrial ruling under Rule 404(b), witnesses testified that R.G. and A.S. went to Normann's clinic for cosmetic surgery in December 2006 and April 2007, respectively. During R.G.'s liposuction procedure, Normann administered local anesthesia and R.G. went into respiratory and cardiac shock. Normann improperly intubated R.G., forcing air into his abdomen. Normann delayed contacting 9-1-1 and physically prevented paramedics from providing care to R.G. When Normann attempted to intubate R.G. a second time, "blood started pooling out" of R.G.'s mouth. Medical experts testified that R.G. died of "drug intoxication with inappropriate intubation following [respiratory] arrest."

**¶9**      With respect to A.S., witnesses testified her heart stopped after surgery, but Normann failed to properly intubate her, delayed contacting 9-1-1 and did not inform paramedics of the procedure he had performed.  Medical experts testified that A.S. died of a pulmonary fat embolization caused by the procedure.  As with the other two incidents, paramedics who responded testified that Normann's clinic was not properly equipped for operative or post-operative procedures.

**¶10**      The Arizona Medical Board ("Board") began investigating the first two deaths in May 2007.  Board representatives testified that Normann's clinic was not properly equipped, medications were not stored properly, equipment maintenance records were absent and clinic staff had little to no medical training.  Pending conclusion of the Board's investigation, Normann agreed that he would not perform or supervise medical procedures in his clinic.  This agreement was in effect at the time of L.R.'s death.  The Board investigated L.R.'s death, made findings similar to those it had made in connection with the two previous patient deaths and referred the case to law enforcement.

**¶11**      The superior court provided a limiting instruction, directing the jury that it could consider evidence concerning the other two deaths only to establish Normann's intent, knowledge or absence of mistake in connection with L.R.'s death.  The jury found Normann guilty; later, Normann pled guilty to the other two charges and agreed that the second offense constituted a repetitive offense for sentencing purposes.  The court imposed concurrent sentences, the longest of which was 14 years' imprisonment.

**¶12**      We have jurisdiction of Normann's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2018), 13-4031 (2018), and -4033(A)(1) (2018).[2]

## DISCUSSION

**¶13**      Normann argues the superior court erred under Arizona Rule of Evidence 403 in allowing the State to present other-acts evidence under Rule 404(b).  Normann argues admission of the other-acts evidence prevented him from receiving a fair trial.  We review the admission of

---

[2]      Absent material revision after the date of an alleged offense, we cite the current version of a statute or rule.

4

other-acts evidence for an abuse of discretion. *State v. VanWinkle*, 230 Ariz. 387, 392, ¶ 18 (2012).

**¶14** Evidence of other acts generally is inadmissible to prove a person acted in conformance with a character trait. Ariz. R. Evid. 404(b); *State v. Roscoe*, 145 Ariz. 212, 216 (1984). However, other-acts evidence may be admissible to prove intent, knowledge, or absence of mistake or accident, if the evidence is relevant and the risk of prejudice does not substantially outweigh the evidence's probative value. Ariz. R. Evid. 404(b); Ariz. R. Evid. 403; *State v. Goudeau*, 239 Ariz. 421, 444, ¶ 58 (2016). Evidence is unfairly prejudicial if it "has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy or horror." *State v. Mott*, 187 Ariz. 536, 545 (1997). If requested, the superior court also must provide an appropriate limiting instruction. Ariz. R. Evid. 105; *State v. Lee*, 189 Ariz. 590, 600 (1997).

**¶15** To convict Normann of the charged offense, the State had to prove, among other things, that he was aware of and consciously disregarded a substantial and unjustifiable risk and his conduct created a grave risk of death to L.R. *See* A.R.S. §§ 13-105(10)(c) (2018), -1104(A)(3) (2018). As to use of evidence concerning any two of the deaths to prove Normann's guilt in a third, we noted in the first appeal that:

> the probative value of the evidence of the three offenses would flow solely in one direction – *from the earlier to the later*. For example, while the circumstances of the death of the first patient in December 2006 would inform Normann as he treated the second and third patients in subsequent months, the circumstances of the deaths of the second and third patients could not have informed Normann as he treated the first.

*Normann*, 1 CA-CR 11-0696, 2013 WL 4859655, at *3, ¶ 14 (emphasis added). We reasoned that "the knowledge Normann gained by his alleged failure in [the earlier] case might be relevant to actions he took with respect to a later patient who required emergency care." *Id*. at *4, ¶ 17.

**¶16** The State's approach in the retrial on remand was consistent with this reasoning: It properly presented other-acts evidence related to R.G. and A.S. to establish that Normann knew of the risks involved in performing or supervising procedures at his clinic and consciously disregarded them. *See State v. Buot*, 232 Ariz. 432, 433, ¶ 6 (App. 2013) (prior threats admissible to establish intent or absence of accident in second-

degree murder prosecution); *State v. Woody*, 173 Ariz. 561, 563 (App. 1992) (prior conviction admissible to establish reckless mental state); *State v. Smith*, 130 Ariz. 74, 76 (App. 1981) (prior abuse admissible to establish reckless mental state). The superior court properly found the other-acts evidence was admissible for a proper purpose under Rule 404(b).

¶17 Without citing any specific evidence, Normann broadly argues evidence of the first two deaths was inadmissible under Rule 403. A superior court's balancing of the prejudice and probative value of evidence under Rule 403 is a matter within the sound discretion of the court. *State v. Taylor*, 169 Ariz. 121, 126 (1991). Here, the three deaths all occurred within a seven-month period at the same location under similar circumstances, and the first two triggered an investigation by the Board that remained pending at the time of the third death. Although the other-act evidence was tragic, the record does not show that use of the evidence suggested a verdict on an improper basis or prevented Normann from receiving a fair trial. Although Normann broadly argues the evidence was unfairly cumulative, the superior court ruled before trial that he could object to specific evidence on that ground, and he cites no occasion on which he made such objection. The other-acts evidence was relevant to the issue of Normann's mental state, its probative value was not substantially outweighed by unfair prejudice, and the superior court provided an appropriate limiting instruction.[3]

---

[3] Without supporting citations or argument, Normann argues admission of the evidence violated his rights to "due process, an impartial jury, [and] equal protection." We will not address an issue for which a party provides no supporting argument or legal authorities. *See State v. Carver*, 160 Ariz. 167, 175 (1989).

## CONCLUSION

¶18 For the foregoing reasons, we affirm the conviction and the resulting sentence.



AMY M. WOOD • Clerk of the Court
FILED: AA