This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39234**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JAVIER PONCE, JR.,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa Hart, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** The charges in this case arose from the fatal shooting of Nicholas Mendoza on October 26, 2018, by Defendant Javier Ponce, Jr. Defendant was charged with first and second degree murder, contrary to NMSA 1978, § 30-2-1 (1994), tampering with evidence, contrary to NMSA 1978, § 30-22-5 (2003), and two counts of child abuse by endangerment (no death or great bodily harm), contrary to NMSA 1978, § 30-6-1(D)(1)

(2009). Firearm enhancements, contrary to NMSA 1978, § 31-18-16 (1993), were added to both the murder and child abuse charges. The jury rejected Defendant's claim to have shot Mendoza in self-defense, and found Defendant guilty of voluntary manslaughter, contrary to NMSA 1978, § 30-2-3(A) (1994), a lesser included offense of both first and second degree murder. Defendant does not appeal his conviction for voluntary manslaughter, or for tampering with evidence. Defendant's appeal focuses solely on his convictions for child abuse by endangerment. We affirm one conviction of child abuse by endangerment and reverse the other based on insufficient evidence.

**{2}**     Defendant was convicted of one count of child abuse by endangerment as to Georgia, a fifteen-year-old child, and a second count as to her younger sister, Angelina, a thirteen-year-old child, who lived in the apartment next door to Defendant. The State claimed, and the jury agreed, that Georgia and Angelina were placed at substantial and foreseeable risk of harm when Defendant shot Mendoza and that Defendant was aware that the children were in close proximity to his target and would be in or near the line of fire. Defendant argues on appeal that the evidence was insufficient to convict him of child abuse by endangerment of either Georgia or Angelina. We affirm Defendant's conviction of Count 4, child abuse by endangerment of Georgia, but reverse Count 3, child abuse by endangerment of Angelina.

## BACKGROUND

**{3}**     The October 26, 2018 shooting of Mendoza took place at a triplex apartment building in Albuquerque, New Mexico. At trial, the building was described by Albuquerque Police Officer Christopher Luthi, who was called to the scene the night of the shooting. Officer Luthi identified photographs of the outside of the apartment building that showed three ground-level apartment doors. The doors to Apartments A and B were located next to each other, on the right side of the building. The door to Apartment C was located further away, near the left corner of the apartment building. The apartments opened to a narrow patio area running the length of the building, and then to a parking lot.

**{4}**     In October 2018, Mary R. lived in Apartment B, the middle apartment, with her seven children. Mendoza, the victim of the shooting, was the uncle of one or more of the children and a close family friend. He had been released from jail on October 25, 2018, and came to visit Mary and her children.

**{5}**     Defendant shared Apartment A, immediately next door to Mary's apartment, with a roommate, Gary Hill. Others often stayed in Apartment A in addition to Hill and Defendant. Bad blood had developed between Mary and all of the residents of Apartment A. Mary believed the residents of Apartment A had broken into her apartment and had stolen televisions, groceries, cleaning supplies, and other items. Mary told Mendoza when he visited about her anger toward her neighbors in Apartment A and her belief that they had stolen items from her apartment. Mendoza took up Mary's fight, accosting the neighbors and threatening them.

**{6}** On the evening of October 26, 2018, after briefly leaving Mary's apartment, Mendoza returned to the apartment complex. When Mendoza returned, Mary was standing outside the door to her apartment, Apartment B. The doors to Apartment B and Apartment A were next to each other, separated by only a few feet. The two apartments shared a small rectangular concrete patio area. Georgia and Angelina were also outside.

**{7}** When Mendoza returned, he stood outside on the shared patio in front of the door to Apartment A. Georgia testified that she stood next to him, on his left, just "a couple of steps" away. Defendant was inside Apartment A and he and Mendoza were talking back and forth through the screen door. Georgia testified that Mendoza opened the screen door to Apartment A, and she heard Defendant say, "If you come in or take a step, you're—I'm going to shoot." Georgia repeated that she was standing "right next to my uncle [Mendoza]." Defendant testified that he shot Mendoza from inside Apartment A. The shot hit Mendoza in the left side of his chest.

**{8}** Georgia testified that she could see Defendant as he shot Mendoza. Georgia stated that Defendant was standing just, "A couple of feet[] away," inside the living room of Apartment A and that she saw Defendant pull the gun out from his pants, raise it in front of Mendoza, and shoot Mendoza. Angelina stood at the far end of the patio.

**{9}** Mendoza ran to the parking area and fell to the pavement behind his wife's car, where he died before officers arrived. Georgia continued to stand on the porch, where she spoke with police when they arrived.

**{10}** We discuss additional facts as needed in our analysis of the issues.

**DISCUSSION**

**{11}** Defendant claims on appeal that the evidence was insufficient to establish the required mens rea for conviction of child abuse by endangerment of Georgia, arguing that the State failed to introduce evidence showing that he was aware that Georgia was just outside his apartment door, dangerously near the line of fire. As to Angelina, Defendant claims that she was too far away from the line of fire to be in foreseeable danger of substantial harm. We conclude that sufficient evidence supports the verdict of child abuse by endangerment of Georgia. We agree with the State's concession that the evidence does not support a conviction of child abuse by endangerment of Angelina. We explain.

**{12}** "Abuse by endangerment is a special class of child abuse designed to punish conduct that exposes a child to a significant *risk* of harm," regardless of physical injury to the child. *State v. Granillo*, 2016-NMCA-094, ¶ 12, 384 P.3d 1121 (internal quotation marks, and citation omitted). Child abuse by endangerment "consists of a person knowingly, intentionally or [recklessly],[1] and without justifiable cause, causing or

---

[1]In *State v. Consaul*, our Supreme Court clarified that "criminally negligent child abuse" should be labeled as "reckless child abuse," without future reference to negligence. 2014-NMSC-030, ¶ 37, 332 P.3d 850.

permitting a child to be . . . placed in a situation that may endanger the child's life or health." Section 30-6-1(D)(1). For a conviction of child abuse by endangerment, our Supreme Court has held that the defendant's conduct must create a "*substantial and foreseeable risk*" of harm to the child. *State v. Chavez*, 2009-NMSC-035, ¶ 22, 146 N.M. 434, 211 P.3d 891. In determining whether the risk is "substantial and foreseeable" the Supreme Court in *Chavez* focuses primarily on the gravity of risk, *id.* ¶ 23, and secondarily on the likelihood that the harm will occur, *id.* ¶ 26. *See State v. Gonzales*, 2011-NMCA-081, ¶ 17, 150 N.M. 494, 263 P.3d 271 (noting that the likelihood the harm will occur is no longer the determinative factor, but remains relevant in endangerment cases to ensure that the harm was foreseeable), *aff'd on other grounds*, 2013-NMSC-016, ¶ 34, 301 P.3d 380.

**{13}** The mens rea required for child abuse was addressed by our Supreme Court in *Consaul*, 2014-NMSC-030, ¶ 37. The Court held that "recklessness require[s a defendant] to consciously disregard a substantial and unjustifiable risk of such a nature and degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the [defendant]'s situation." *Id.* (citing Model Penal Code § 2.02(2)(c) (West 2021) (defining "recklessly")). "[A]ccidental conduct cannot support a conviction for [reckless] child abuse." *State v. Arrendondo*, 2012-NMSC-013, ¶ 26, 278 P.3d 517.

## I.      Sufficient Evidence Supports Defendant's Conviction for Endangerment of Georgia

**{14}** We address first Defendant's claim concerning his conviction for endangerment of Georgia. The jury was instructed that in order to convict Defendant of child abuse by endangerment, the jury was required to find beyond a reasonable doubt that Defendant: (1) fired a gun toward [Georgia]; (2) [b]y engaging in [such] conduct; . . . [Defendant] caused [Georgia] to be placed in a situation that endangered the life or health of [Georgia]; and (3) [Defendant] showed a reckless disregard without justification for the safety or health of [Georgia].

**{15}** The jury instruction also informed the jury that to find "reckless disregard," as set forth in Subparagraph 3 of the instruction, the jury must find that Defendant's "conduct was more than merely negligent or careless," and that Defendant "caused a substantial and unjustifiable risk of serious harm" to Georgia. "A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than [Defendant] out of concern for the safety or health of [Georgia]." UJI 14-612 NMRA. We note that "[t]he jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alteration, internal quotation marks, and citation omitted).

---

We incorporate that instruction into the language of the statute in this opinion, while acknowledging that the statutory text reads "negligently."

**{16}** Defendant does not contend that shooting in the direction of a child, with the knowledge that the child is nearby, is insufficient to prove child abuse by endangerment. *See State v. McGruder*, 1997-NMSC-023, ¶ 38, 123 N.M. 302, 940 P.2d 150 (upholding the defendant's child endangerment conviction where the defendant fatally shot mother's boyfriend before threatening to shoot mother, who was standing in front of her child in the line of fire), *abrogated on other grounds by Chavez*, 2009-NMSC-035, ¶¶ 2, 16; *see also State v. Trujillo*, 2002-NMCA-100, ¶ 16, 132 N.M. 649, 53 P.3d 909 (holding that the requirement for endangerment was met where "the children were situated directly in the line of physical danger from a lethal weapon, which was pointed in their direction during a heated exchange"). Defendant's sole contention is that the evidence was insufficient to allow any reasonable jury to find beyond a reasonable doubt that he was aware that Georgia was standing close to her uncle, a position, which put her in danger of serious harm or death from a shot fired at her uncle. We do not agree.

**{17}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and citation omitted). "Substantial evidence is that which a reasonable mind accepts as adequate to support a conclusion." *State v. Huerta-Castro*, 2017-NMCA-026, ¶ 24, 390 P.3d 185. "This Court evaluates the sufficiency of the evidence in a criminal case by viewing the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences in favor of upholding the conviction, and disregarding all evidence and inferences to the contrary." *State v. Trujillo*, 2012-NMCA-092, ¶ 5, 287 P.3d 344. "[T]he jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We do not "consider the merit of evidence that may have supported a [different result.]" *State v. Kersey*, 1995-NMSC-054. ¶ 11, 120 N.M. 517, 903 P.2d 828 (internal quotation marks and citation omitted).

**{18}** Defendant supports his argument that the evidence conclusively shows he was not aware of Georgia's location at the time he shot Mendoza by pointing to his statement to police made shortly after his arrest, and played for the jury at trial. Contrary to Defendant's claim, in that interview, Defendant admits he knew Georgia was outside and running back and forth in the patio area in front of the three apartments: Defendant relies on his statement: "When the [children] took off . . .that's when I shot." Defendant fails to mention the statement he made later in the same interview admitting that Georgia was close enough that she likely "[saw] everything . . .even with the screen door shut."

**{19}** "It has been firmly established in this jurisdiction that only the trier of the facts may weigh the testimony, determine the credibility of witnesses, reconcile inconsistent or contradictory statements of a witness, and say where the truth lies." *Tapia v. Panhandle Steel Erectors Co.*, 1967-NMSC-108, ¶ 7, 78 N.M. 86, 428 P.2d 625. Drawing inferences in favor of the jury's verdict, the jury could reasonably have inferred

that Georgia must have been close to the door to Apartment A because she was able to see everything happening inside the apartment.

**{20}** Even putting aside Defendant's own admissions, Georgia's testimony that she was standing right next to her uncle (Mendoza) when Defendant shot him and could see inside Defendant's apartment is sufficient to create an inference that Defendant could see her. To the extent Defendant argues that Georgia could see in only because the lights were on inside, but he could not see out, or that his view was blocked by Mendoza, who was standing in the doorway, these arguments are contradicted by Defendant's admission in his statement to police that his porch light was on, he could see past Mendoza, and "could see the kids playing" outside his apartment when he fired.

**{21}** While we acknowledge that Defendant has pointed to some contrary evidence that might support an acquittal, this evidence does not provide a basis for reversal. We remind Defendant that, in reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict. *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**{22}** Applying this standard, it is readily apparent that a rational trier of fact could have found beyond a reasonable doubt that Defendant was aware of Georgia's presence in or near the line of fire when he shot Mendoza. The evidence is thus sufficient to support the mens rea element of abuse by endangerment as to Georgia. We therefore affirm Defendant's conviction on Count 4.

## II.     The Evidence Is Insufficient to Support Defendant's Conviction for Child Abuse by Endangerment of Angelina

**{23}** We conclude that there is not sufficient evidence from which a jury could have found that Defendant "caused [Angelina] a substantial and unjustifiable risk of serious harm," UJI 14-612, and we therefore reverse Defendant's conviction of child abuse by endangerment of Angelina. In briefing, the State concedes that the evidence was insufficient to support the child abuse conviction as to Angelina. Although we are not bound by this concession, *State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, having reviewed the record under the standard of review for sufficiency of the evidence, we agree that the evidence failed to show that Angelina was in the zone of danger when Defendant fired at Mendoza.

**{24}** Angelina testified that she was standing in front of the door to her apartment at the time of the shooting. Because Angelina was not able to estimate the distance, the parties stipulated that she was ten to twelve feet away from Mendoza and not in the line of fire. We agree with the State and Defendant that—under the facts of this case—this distance was too great to support a rational inference that there was a "substantial and foreseeable" risk of harm to Angelia. *See State v. Roybal*, 1992-NMCA-114, ¶¶ 31-32, 115 N.M. 27, 846 P.2d 333 (reversing conviction for child endangerment where

defendant left his six-year-old daughter in car approximately ten or fifteen feet away from a drug transaction); *State v. Jensen*, 2006-NMSC-045, ¶ 10, 140 N.M. 416, 143 P.3d 178 (holding the state must prove that "a defendant place[d] a child within the zone of danger and physically close to an inherently dangerous situation").

**CONCLUSION**

**{25}** We, therefore, affirm Defendant's conviction for child abuse by endangerment of Georgia and reverse Defendant's conviction for child abuse by endangerment of Angelina and remand to the district court for action consistent with this opinion.

**{26} IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**ZACHARY A. IVES, Judge**