1998-NMSC-030

964 P.2d 113

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Prentice REED, Defendant–Petitioner.**

No. 23929.

Supreme Court of New Mexico.

Aug. 31, 1998.

Dorothy C. Sanchez, Albuquerque, for Defendant–Petitioner.

Hon. Tom Udall, Attorney General, Max Shepherd, Assistant Attorney General, Santa Fe, for Plaintiff–Respondent.

## OPINION

McKINNON, Justice.

{1} This case presents three questions: (1) whether a trace amount of cocaine detected in a cellophane cigarette wrapper carried in one's pocket proves knowledge that the substance was cocaine; (2) whether a law enforcement officer who wants to search a vehicle based on a hunch that the vehicle contains illegal drugs may validly stop the vehicle based on personal observations of violations of the Motor Vehicle Code, NMSA 1978, § 66–1–1 to –8–140 (1978, as amended through 1994); and (3) whether, based only on a hunch, an officer may broaden the scope of a routine traffic stop to a narcotics investigation by obtaining consent to search.

{2} With respect to the first issue, we hold that a trace amount is not sufficient evidence to prove knowledge. Consequently, Prentice Reed's conviction for possession of cocaine is reversed and the charge dismissed. Since our disposition results in a dismissal of the possession charge, we do not address the other interesting questions raised in this appeal. *Schlieter v. Carlos,* 108 N.M. 507, 510, 775 P.2d 709, 712 (1989) ("It is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so.")

## I. FACTS

{3} On June 5, 1994, at approximately 1:00 a.m. in Hobbs, New Mexico, Eddie Taylor was driving a vehicle in which Prentice Reed was the sole passenger. Officer Dur-

ham of the Hobbs Police Department observed a broken rear license-plate light and saw that Taylor was not wearing a seat belt, each a petty misdemeanor under the Motor Vehicle Code. *See* NMSA 1978, § 66–3–805(C) (1978) (rear license-plate light); § NMSA 1978, 66–7–372(A) (1989) (seat belt). He stopped the vehicle.

{4} Prior to making the stop, Durham did not receive any information indicating that this vehicle or its occupants might be involved in criminal activity. There was also no indication that either Taylor or Reed had been drinking alcohol or was under the influence of illegal drugs.

{5} While in uniform, Durham was operating his police cruiser, and was presumably armed. After stopping the vehicle, he asked Taylor for his driver's license and proof of insurance.[1] Durham could not recall whether or not Taylor produced insurance documents. At some point, Reed asked Taylor for a pack of cigarettes, which Taylor retrieved from a hole in the dashboard and gave to Reed. Durham saw the hole in the dashboard with cigarette packs in it; however, at no time did he observe any contraband in plain view.

{6} When Taylor failed to produce his license, Durham ran a computer check on its status. While waiting for the results, Durham asked Taylor for permission to search the vehicle, and Taylor consented. Durham then instructed Taylor and Reed to step out and stand at the rear of the vehicle with Officer Smith (who was also in uniform and presumably armed) while Durham conducted the search. He found no contraband in the vehicle.

{7} Durham then asked Taylor and Reed "if they would mind emptying their pockets." According to Durham, "they did so voluntarily." Durham testified that at no time did he fear for his safety and that neither Taylor nor Reed acted suspiciously. When Reed emptied his pockets, he handed Durham a cellophane cigarette wrapper and the cigarette pack. The wrapper was later found to have a trace amount of cocaine on its inside surface.

{8} When Reed handed Durham the cigarette wrapper, Durham could not see anything until he held it up to a streetlight, at which time he observed a trace amount of a "white powdery substance" on the inside surface. He did not recall asking Reed if he could identify the substance; nor did he administer a drug test of any kind. A field test of the substance later indicated the presence of cocaine. The detective who conducted the field test characterized the amount as a "trace."

{9} A chemist from the State crime laboratory, who was qualified as an expert witness, testified lab tests confirmed that the residue was cocaine, and the amount in the wrapper was so small that he was unable to weigh it without destroying it. He estimated the weight to be approximately two milligrams, which he equated to about five or six grains of salt. To see the trace amount, one would have to turn the wrapper under a good light or a strong flashlight. The chemist opined that at one time the wrapper contained a larger quantity of crack cocaine and that the residue tested had rubbed off or remained in the wrapper after other cocaine had been removed from the wrapper.

{10} After placing Reed under arrest, Durham cited Taylor for no driver's license, but did not cite him for any other vehicle violations. There is no indication in the record that Durham warned Taylor of the other violations prior to letting him go.

## II. PROCEEDINGS

{11} Reed was charged with possession of cocaine, in violation of NMSA 1978, § 30–31–23 (1990). Reed unsuccessfully moved for a directed verdict, contending there was no evidence that he *knew* the substance was cocaine, an essential element of the offense of possession, *see* § 30–31–23(A), and the jury found Reed guilty of cocaine possession. The trial court sentenced Reed to eighteen months in prison, to be followed by a one-year parole period.

---

1. Durham apparently did not ask for registration, presumably because he knew that the vehicle was registered under the name of the individual he had previously arrested on drug charges.

{12} In the Court of Appeals, Reed urged three grounds for reversal, two of which are before this Court.[2] First, he contended the trial court erred in denying his motion to suppress because the stop was invalid under *Guzman*. In a memorandum opinion, the Court of Appeals disagreed, noting that *Botero–Ospina*, 71 F.3d at 785, and *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), permitted pretextual traffic stops, if justified by observation of traffic violations. Secondly, Reed argued for dismissal of the possession charge because there was no evidence that he knew the substance in the wrapper was cocaine. Two members of the three-judge panel found the evidence sufficient to support the verdict. Then–Chief Judge Apodaca dissented, agreeing with Reed that there was insufficient evidence to prove the essential element of knowledge. *See State v. Reed*, No. 16,257, slip op. at 1 (N.M.Ct.App. Sept. 13, 1996) (Apodaca, C.J., concurring in part and dissenting in part); *see also* § 30–31–23(A); UJI 14–3102 NMRA 1978.

{13} We granted Reed's petition for certiorari and now reverse the conviction and dismiss the possession charge.

## III. DISCUSSION: SUFFICIENCY OF EVIDENCE

{14} Although we must accept "all reasonable, permissible inferences" in favor of the verdict, *State v. Duran*, 107 N.M. 603, 605, 762 P.2d 890, 892 (1988), we must also "ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction," *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992). To affirm Reed's conviction, we must "explain how the jury might have reasoned that Defendant had both knowledge and possession." *State v. Sizemore*, 115 N.M. 753, 758, 858 P.2d 420, 425 (Ct.App. 1993).

{15} Reed argues that mere possession of a wrapper with only a trace amount of cocaine in it is not a sufficient basis to prove knowledge. In the absence of some corroboration, such as drug paraphernalia, suspicious or intoxicated behavior, positive urine sample, flight, or an admission, no rational jury could infer that he knew the wrapper contained cocaine. The State contends that the jury could reasonably infer that the cocaine was in the wrapper because someone had taken the wrapper off a package of cigarettes, used that wrapper to store or transport a quantity of crack cocaine that had subsequently been consumed or disposed of, and that the wrapper was therefore not the one from the package of cigarettes Mr. Taylor had just given [Reed]. The State apparently reasons that Reed either used the wrapper for one of these illicit purposes or knew that it had been so used by someone else. Reed counters that this inferential chain, in the absence of evidence to support its links, is speculation, and therefore, insufficient to support his conviction. We agree with Reed.

{16} There was no evidence to indicate Reed knew the wrapper had a white residue in it or that the residue was cocaine. The amount of cocaine in the wrapper was not immediately apparent to the human eye. Reed did not flee or otherwise act in a suspicious manner. *Cf. Sizemore*, 115 N.M. at 757, 858 P.2d at 424 (listing cases permitting inference of guilt from unexplained flight). Durham found no drug paraphernalia or other drugs in the vehicle or on Reed's person. *Cf. State v. Wood*, 117 N.M. 682, 686, 875 P.2d 1113, 1117 (Ct.App.1994) (trace amount of cocaine and drug paraphernalia in defendant's pocket sufficed to prove knowledge that substance was cocaine). Nor was there an admission by Reed that might support an inference of knowledge. Finally, there was no evidence of intoxication or otherwise suspicious behavior by Reed or Taylor. As Judge Apodaca stated in his dissent, "the record is absolutely void of any facts that would directly or inferentially give rise to a finding" that Reed knew the substance in the wrapper was cocaine. *Reed*, No. 16,257, slip op. at 2 (Apodaca, C.J., concurring in part and dissenting in part).

{17} The State argues that Reed's possession of a wrapper with cocaine residue inside provides "corroboration [of Reed's knowledge] in the same way that. finding

---

2. His ineffective assistance of counsel claim is    not made here.

trace amounts of a controlled substance on other types of drug paraphernalia has been found to corroborate a defendant's knowledge." Reed counters that a cellophane cigarette wrapper is used to protect the freshness of a pack of cigarettes and therefore has a "legitimate common purpose." *Lord v. State,* 616 So.2d 1065, 1066 (Fla.Dist.Ct.App. 1993) (adopting the legitimate common purpose rule and noting that microscopic amounts of cocaine can be found on much of the currency circulating in south Florida). The State argues that, far from having a legitimate common purpose, cellophane cigarette wrappers "are commonly used to transport and store controlled substances and particularly crack cocaine." However, the State presented no evidence at trial to support this assertion; therefore, it will not be considered on appeal. *See Fugere v. State Taxation and Revenue Dep't,* 120 N.M. 29, 32, 897 P.2d 216, 219 (Ct.App.1995) (matters not of record will not be considered on appeal).

{18} There is no corroborating evidence that Reed knew the wrapper contained cocaine. Since we cannot articulate a coherent rationale for finding that Reed had such knowledge, we reverse his conviction and dismiss the possession charge.

## IV. CONCLUSION

{19} We hold that there was insufficient evidence to support Reed's conviction, and therefore the cocaine possession charge is dismissed.

{20} Reversed and remanded for dismissal.

{21} IT IS SO ORDERED.

FRANCHINI, C.J., and MINZNER and SERNA, JJ., concur.

BACA, J. (dissenting).

BACA, Justice (Dissenting).

{22} I must respectfully dissent from the majority's decision to reverse Defendant Reed's conviction. Sufficient evidence in the record clearly permitted a rational juror to find guilt beyond a reasonable doubt. In reviewing sufficiency of the evidence, this Court views the evidence in the light most favorable to the trial court's ruling, drawing all reasonable inferences from the facts to support the verdict. *See State v. Apodaca,* 118 N.M. 762, 766, 887 P.2d 756, 760 (1994); *State v. Bankert,* 117 N.M. 614, 618, 875 P.2d 370, 374 (1994). The ultimate question is whether the evidence is legally sufficient to support a finding of all the elements of the crime. *See State v. Becerra,* 112 N.M. 604, 607, 817 P.2d 1246, 1249 (Ct.App.1991). A court should grant a directed verdict only when no reasonable inferences or circumstances present a jury question. *State v. Aranda,* 94 N.M. 784, 786, 617 P.2d 173, 175 (Ct.App.1980).

{23} To find Defendant guilty of possession of a controlled substance, here cocaine, the State had to prove beyond a reasonable doubt that: (1) Defendant had cocaine in his possession, (2) Defendant knew it was cocaine, and (3) the crime occurred in New Mexico. UJI 14–3102 NMRA 1998. With regard to the second element, the majority concludes that there is insufficient evidence to prove that Reed knowingly possessed the cocaine. The majority focuses on the amount of cocaine found in the cellophane wrapper, contending that only a residue of cocaine was present, so little that it was not readily visible to the human eye. From this questionable observation, the majority displaces the jury verdict and concludes that nothing in the record suggests that Reed knew about the cocaine. I disagree.

{24} Reed had only a small amount of cocaine on his person. However, possession of even a trace of illegal drugs will support a conviction. *See State v. Wood,* 117 N.M. 682, 686, 875 P.2d 1113, 1117 (Ct.App.1994) (finding that knowledge of possession may be inferred where a defendant had a syringe on his person that tested positive for .0001 grams of contraband). Here, the record clearly permitted the jury to infer that Reed knowingly possessed cocaine. Contrary to the majority's suggestion, the cocaine residue was not invisible. The arresting officer testified that he saw the residue in the bag when Reed handed it to him. (T. 4A/0237–0277). The prosecutor asked the officer directly whether he could see the white residue, to which the officer responded "Yes, ma'am."

*Id.* The prosecutor also asked the officer specifically, "There was enough that you could see it?" *Id.* Again, the officer responded affirmatively, noting that enough cocaine existed to run three separate field and lab tests and still leave some visible cocaine in the wrapper. *Id.* If the officer could see the cocaine, the jury was free to infer that Reed also could see it and that Reed knew the cocaine was there when he put the wrapper in his pocket. *See Wood,* 117 N.M. at 686, 875 P.2d at 1117; *Aranda,* 94 N.M. at 786, 617 P.2d at 175 (holding that a jury may consider circumstantial evidence, from which inferences may be drawn, when it decides whether the burden of proof has been met).

{25}  Apart from the arguments addressing the amount of cocaine, the majority also states that no other evidence in the record corroborates that Reed knew of the cocaine's existence. For example, the majority contends that Reed would have fled, acted nervously, or not handed over the wrapper if he knew that it had cocaine in it. However, the arresting officer noted in his testimony that, when stopped by officers, arrestees commonly hand over illicit drugs upon request without fleeing or exhibiting noticeable changes in their behavior. (T. 4A/0237–0277). Thus, the lack of some noticeable response or behavioral reaction to the officer's request for Reed to empty his pockets provides no guidance in this inquiry.

{26}  The majority also discounts the cellophane wrapper itself as a piece of corroborating evidence. It reasons that the wrapper cannot be considered a piece of drug paraphernalia since it has a common purpose— carrying cigarettes. However, the majority cannot discount all drug paraphernalia used for carrying or preparing drugs merely because the object might have a common use. Syringes, spoons, and cellophane wrappers, to name just a few, all have common uses. That does not mean they are not commonly used as drug paraphernalia.

{27}  Furthermore, the jury may consider the training and experience of the arresting officer. On numerous occasions, the prosecutor premised her questions to the officer with the phrase, "On the basis of your training and experience." *Id.* The jury is permitted to consider that the officer was particularly interested in examining the cellophane wrapper. They are also free to deduce that his training and experience led him particularly to suspect such a wrapper as a transport case for drugs. Hence, from the officer's experience and his actions in this case, the jury could infer the corroborating nature of the cellophane wrapper as drug paraphernalia. A jury is permitted to put two and two together. The majority decision denies the jury its power to make such inferences from the evidence in the record, and it incorrectly takes this case out of the jury's hands.

{28}  For these reasons, I respectfully DISSENT.