The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: **JULY 20, 2022**

**No. A-1-CA-37911**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**FLORENCIO K. MONCAYO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Charles D. Agoos, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**YOHALEM, Judge.**

{1}      Defendant Florencio K. Moncayo appeals his convictions for possession of a controlled substance and possession of drug paraphernalia. He challenges the sufficiency of the evidence to support his conviction for possession of a controlled substance, claiming that the presence of a residue, which cannot be measured or used, is insufficient either to establish possession of a controlled substance, or to establish Defendant's knowledge that the residue was a controlled substance. Defendant also contends that his convictions for both possession of a controlled substance and possession of drug paraphernalia violate double jeopardy. Finding no merit in Defendant's claims, we affirm.

**BACKGROUND**

{2}      In the early morning hours on January 21, 2018, police responded to a report that someone was "trying to kick the door in" at an apartment. The officers encountered Defendant at the scene, apparently agitated and yelling loudly. After placing Defendant under arrest for disorderly conduct, the officers found a clear glass pipe containing a white crystalline residue in Defendant's left front pocket. The substance in the pipe was subsequently tested and identified as methamphetamine. The glass pipe was admitted into evidence as a state's exhibit. Following a jury trial, Defendant was found guilty of both possession of a controlled

substance (methamphetamine), a fourth degree felony under NMSA 1978, Section 30-31-23(A), (E) (2011, as amended 2021), and possession of drug paraphernalia, then a misdemeanor under NMSA 1978, Section 30-31-25.1 (2001, as amended 2022).[1]

**DISCUSSION**

**I.      Sufficiency of the Evidence: Possession of a Controlled Substance**

{3}      We first consider Defendant's challenge to the sufficiency of the evidence to support his conviction for possession of a controlled substance. To convict a defendant of possession of a controlled substance both possession and knowledge of possession of a controlled substance must be established. Section 30-31-23(A); UJI 14-3102 NMRA. In this case, the jury was instructed that to find Defendant guilty they must find beyond a reasonable doubt: (1) "[D]efendant had methamphetamine in his possession"; (2) "[D]efendant knew it was methamphetamine"; and (3) "This happened in New Mexico on or about January 21, 2018." We measure the sufficiency of the evidence against the law as stated in the jury instructions. *Goodman v. OS Rest. Servs., LLC*, 2020-NMCA-019, ¶ 16, 461 P.3d 906 ("[J]ury instructions become the law of the case against which sufficiency of the evidence is

---

[1]Because the law in effect at the time an offense is committed is controlling, this opinion cites to and relies upon the 2018 version of each statute that applied. All citations throughout this opinion to Section 30-31-23 and Section 30-31-25.1 are to the 2018 version, unless otherwise indicated. *State v. Figueroa*, 2020-NMCA-007, ¶ 8, 457 P.3d 983.

to be measured." (internal quotation marks and citation omitted)). Defendant challenges the sufficiency of the evidence to establish both the element of possession and the element of knowledge.

**A.     Standard of Review**

{4}     When reviewing a sufficiency of the evidence challenge, we must determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. "A reviewing court must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.* "This [C]ourt does not weigh the evidence and may not substitute its judgment for that of the fact[-]finder so long as there is sufficient evidence to support the verdict." *Id.* When a sufficiency of the evidence claim requires construction of a statute, as Defendant's claim does here, our review is de novo. *See State v. Maldonado*, 2005-NMCA-072, ¶ 9, 137 N.M. 699, 114 P.3d 379 ("[R]ecognizing that review of the sufficiency of the evidence supporting a conviction may require a court to engage in statutory construction [and that such review is de novo].").

**B. There Is No Error in This Court's Decisions Holding That a Trace Amount of a Controlled Substance Is Sufficient to Support a Conviction for Possession nor Have Those Decisions Become "So Unworkable as to Be Intolerable"**

{5} Defendant challenges the sufficiency of evidence of a trace amount of a controlled substance found inside a glass pipe to support a conviction for possession of methamphetamine. Defendant acknowledges this Court's longstanding precedent holding that our Legislature intended possession of any amount of a controlled substance to violate Section 30-31-23(E), so long as the substance can be identified. *See State v. Grijalva*, 1973-NMCA-061, ¶¶ 15, 17, 85 N.M. 127, 509 P.2d 894 (rejecting the claim that prior law required a useable amount of a narcotic or other listed controlled substance and holding that "the mere possession of *any amount* of the prohibited substance is enough to violate the statutory proscription." (emphasis added)); *see also State v. Wood*, 1994-NMCA-060, ¶ 9, 117 N.M. 682, 875 P.2d 1113 (holding that Section 30-31-23(D) (2010) (Subsection (E) in 2018)) unambiguously criminalizes possession of "any clearly identifiable amount of a controlled substance").

{6} Defendant contends *Grijalva* and *Wood* were implicitly abrogated by our Supreme Court's decision in *State v. Office of the Public Defender ex rel. Muqqddin*, 2012-NMSC-029, 285 P.3d 622, or alternatively, *Grijalva* and *Wood* should be overturned based on "the recent analytical modifications to statutory construction." Defendant alleges our Supreme Court adopted in *Muqqddin.* Defendant contends, in

the alternative, *Wood* and *Grijalva* should be overturned because these cases have become "so unworkable as to be intolerable."

{7} Defendant has a high bar to clear in seeking to overturn longstanding precedent. Defendant must show an obvious error in a prior decision or a special justification before we will depart from precedent. *See Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 15, 134 N.M. 43, 73 P.3d 181 (listing the special justifications that can support overturning precedent); *see also State v. Radosevich*, 2018-NMSC-028, ¶ 21, 419 P.3d 176 ("We do not overturn precedent lightly, but where our analysis convincingly demonstrates that a past decision is wrong, the Court has not hesitated to overrule even recent precedent." (internal quotation marks and citation omitted)). A party asking this Court to overturn a decision must generally show either obvious error or that (1) the decision "is so unworkable as to be intolerable"; (2) reversing the decision would not "create an undue hardship" as a result of reliance on the previous decision; (3) the law surrounding the prior decision has "developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine"; or (4) "the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification." *Herrera*, 2003-NMSC-018, ¶ 15 (internal quotation marks and citation omitted).

{8} We address first Defendant's claim that *Wood* and *Grijalva* were wrongly decided in light of what Defendant claims is a sea change in statutory analysis

adopted by our Supreme Court in *Muqqddin.* Defendant argues that our Supreme Court's opinion in *Muqqddin* abrogates the plain meaning analysis employed by this Court in *Wood* and *Grijalva*, requiring that our courts ignore the plain meaning of the words and instead turn to an analysis of the policy underpinning the statute. According to Defendant, this Court in *Wood* and *Grijalva* wrongly applied what Defendant describes as the defunct plain meaning rule to conclude that the statutory language was clear and unambiguous and, having so concluded, relied exclusively on the language of the statute, overlooking what Defendant claims is legislative intent to punish only possession of a useable or measureable amount of a controlled substance. Defendant further contends that our possession of drug paraphernalia statute (which, at the time of this offense, made possession of drug paraphernalia a misdemeanor) was intended by the Legislature to be the proper statutory vehicle for prosecuting possession of a residue of a controlled substance found inside an item of drug paraphernalia.

{9}     First, we are not persuaded by Defendant's argument that *Muqqddin* represents a change from the well-established principles of statutory construction applied by this Court in *Grijalva* and *Wood*. Our Supreme Court, at the outset of its opinion in *Muqqddin*, summarized the principles of statutory construction that the Court went on to apply as follows: "Our primary goal is to ascertain and give effect to the intent of the Legislature. In doing so, we examine the plain language of the

6

statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish." 2012-NMSC-029, ¶ 13 (internal quotation marks and citation omitted).

{10} Although acknowledging that policy must play a role, *Muqqddin* did not abrogate the plain meaning rule. That rule provides that if a state statute is free from ambiguity and the meaning of statutory language is plain, it must be applied as written. *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 2, 117 N.M. 346, 871 P.2d 1352. Our Supreme Court in *Muqqddin* adopted and applied the guidance on statutory construction provided by the Court's opinion in *Helman*, noting that *Helman* refused to abrogate the plain meaning rule, instead holding that the rule continues to apply where there is no ambiguity in a statute, but admonishing our courts to "'exercise caution in applying the plain meaning rule,'" being aware that a seemingly clear phrase "'may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning.'" *Muqqddin*, 2012-NMSC-029, ¶ 38 (quoting *Helman*, 1994-NMSC-023, ¶ 23). *Helman* recommends that courts read the questioned phrase or word in the context of other sections of the same statute, and look to the history of the statute to discern the policy behind the words to be sure that the phrase is indeed unambiguous before relying on the plain meaning rule. Importantly, neither *Helman* nor *Muqqddin*

challenge the central rule of statutory construction, a rule adopted by our Legislature and acknowledged as central to statutory construction by our Supreme Court in *Muqqddin*. "The text of a statute or rule is the primary, essential source of its meaning." NMSA 1978, § 12-2A-19 (1997).[2]

{11} Consistent with these principles of statutory construction, the *Muqqddin* Court looked closely at the language of our burglary statute, NMSA 1978, § 30-16-3 (1971), which defines the crime of burglary, in relevant part, as "entry of any vehicle, watercraft, aircraft, dwelling or other structure." The Court criticized some earlier plain-language constructions of the statute for focusing too narrowly on the ordinary meaning of the word "vehicle" in isolation, without considering either the phrase as a whole, or the meaning of the phrase in the context of the statute as a whole, repeating the guidance in *Helman* to exercise caution in applying the plain meaning rule. *See Muqqddin*, 2012-NMSC-029, ¶ 38. Looking to the language of the statute as a whole, the Court found that the phrase "entry of any vehicle" did not clearly and unambiguously resolve the question before the Court: whether entry into an isolated

---

[2]Indeed, four years after deciding *Muqqddin*, our Supreme Court in *State v. Holt*, 2016-NMSC-011, ¶ 12, 368 P.3d 409, acknowledged that "[i]t is well-settled that words in a statute take their ordinary meaning absent legislative intent to the contrary" and even more recently endorsed the continued application of the plain meaning rule in cases where the statutory language is unambiguous. *See Leger v. Leger*, 2022-NMSC-007, ¶ 34, 503 P.3d 349 ("When the plain meaning of statutory language is as straightforward as it is here, it is our obligation to uphold the statute as written.").

part of the vehicle like the gas tank or a wheelhouse, without entering the passenger compartment or trunk, was the type of "entry of any vehicle" intended by the Legislature to commit the crime of burglary. *See id.* ¶¶ 34-38.

**{12}** Having found the phrase at issue ambiguous, the Court then went on to explore the policy the Legislature intended to serve, searching the history of both the common law of burglary and the history of our burglary statute to assist in deciphering the intent of the Legislature. Because the history of our burglary statute revealed legislative intent to severely punish intrusion into private, enclosed spaces, the Court concluded that the phrase "entry of any vehicle" was intended by the Legislature to apply only when there was an intrusion into the private, enclosed areas of a vehicle. The Court noted, as additional support for its understanding of legislative intent, that the Legislature had adopted a statute—tampering with an automobile—which made drilling into a gas tank a misdemeanor. *See id.* ¶¶ 45-46, 50-51. The Court concluded that it was unlikely the Legislature intended for the burglary statute to supplant the tampering statute. *See id.* ¶ 51.

**{13}** We reject Defendant's claim that *Muqqddin* abrogated the plain meaning rule. To the contrary, *Muqqddin* itself applies the principles of statutory construction, which have been longstanding in our jurisprudence; in a given statutory enactment, begin with the words expressed by the Legislature. Determine whether the words are clear as written, or if there is lurking ambiguity when the words are read in the

9

context of the phrase as a whole or the statute as a whole. If the words are clear and the plain meaning unambiguous, apply the words as written. If there is ambiguity, use the common law, the history of the legislation, and past precedent in the courts to assist in determining legislative intent. *Muqqddin* reminds us that it is the judiciary's responsibility to interpret—not to rewrite—the laws it is called upon to review. When the Legislature speaks plainly, we must apply the law as written. When terms are ambiguous, we must conduct a search to discern legislative intent.

{14} Defendant next argues that even if *Muqqddin* did not abrogate the plain meaning rule, *Grijalva* and *Wood* were wrongly decided. We understand Defendant to claim that this Court misapplied the longstanding principles of statutory construction reiterated in *Muqqddin* and arrived at a construction of our possession of a controlled substance statute inconsistent with legislative intent. We therefore, turn to this Court's decisions in *Wood* and *Grijalva* to determine if there was obvious error.

{15} First, as now directed by our Legislature in Section 12-2A-19 and by our Supreme Court in *Muqqddin*, the *Wood* court began its analysis by looking to the text of the statute. *Wood*, 1994-NMCA-060, ¶ 8. Section 30-31-23(A) states that "[i]t is unlawful for a person intentionally to possess *a controlled substance*" (emphasis added), and repeats the same language, again using the phrase possession of "a controlled substance" and adding the phrase possession of "a narcotic," in Section

10

30-31-23(D) (2010), the section making possession of methamphetamine a fourth degree felony. Section 30-31-23(E). Before concluding that this language clearly expresses legislative intent to punish as a felony possession of any identifiable amount of a controlled substance listed in Section 30-31-23(E), this Court, as *Muqqddin* directs, expanded its analysis to consider the language of Section 30-31-23(E) in the context of the other sections of the statute. *See Wood*, 1994-NMCA-060, ¶ 8. The *Wood* Court contrasted the Legislature's choice in Section 30-31-23(B) to adopt different penalties for possession of specific quantities of marijuana— making, for example, possession of "one ounce or less of marijuana" a petty misdemeanor—with the absence of specification of any amount in Subsections (D) and (E) and then went on to construe Subsections (D) and (E) together. *See Wood*, 1994-NMCA-060, ¶ 8.

{16} Defendant argues that this Court mistakenly believed that the "any amount" language of Section 30-31-23(D) was part of Subsection (E) when it concluded that our Legislature intended to punish possession of "any amount" of methamphetamine as a felony. We do not agree. This Court's decisions in *Grijalva* and *Wood* are based on the Court's reading of Section 30-31-23(D), making possession of less dangerous substances a misdemeanor crime, together with the exceptions set out in Subsection (E) for those substances, including methamphetamine, which are to be punished as a felony. We see no error in the Court's analysis of the plain language of the phrase

"a controlled substance," or "a narcotic drug," without specifying the amount, to convey the Legislature's intent to criminalize the possession of "any clearly identifiable amount of a controlled substance," *Wood*, 1994-NMCA-060, ¶ 9, whether that substance was a more dangerous substance listed in Section 30-31-23(E), or one of the less dangerous substances included in Subsection (D).

{17} Defendant also has not convinced us that the result in *Wood* and *Grijalva* conflicts with legislative policy concerning possession of a controlled substance that the result is unreasonable or absurd, or that the result in *Wood* and *Grijalva* is "so unworkable as to be intolerable." *Herrera*, 2003-NMSC-018, ¶ 15 (internal quotation marks and citation omitted); *see State v. Davis*, 2003-NMSC-022, ¶ 13, 134 N.M. 172, 74 P.3d 1064 (noting that statutes should be interpreted in accord with their spirit and purpose, and not "in a manner that leads to absurd or unreasonable results"). Defendant claims that the Legislature's policy goal was to prevent the use or trafficking of a controlled substance and that it is unreasonable, given that policy goal, to criminalize possession of an amount that can neither be used nor trafficked. Defendant's argument fails to acknowledge the policy concerns that support the Legislature's enactment of an absolute ban on possession of any amount of a dangerous substance. Making the possession of paraphernalia with a residue of a dangerous substance a felony, so long as the individual has knowledge of the nature of the substance, reasonably deters the possession of those substances,

12

whether the substance is possessed for personal use, manufacture or sale. Defendant does not identify any permissible reason for possession of methamphetamine.

{18}     Defendant's claim that *Wood* and *Grijalva* are "so unworkable as to be intolerable" relies on the ability of technology to detect increasingly small amounts of a controlled substance, thereby, according to Defendant, subjecting virtually all persons to prosecution for possession. This argument overlooks the additional element required to convict for possession of a controlled substance, that an accused person have knowledge that they have a controlled substance in their possession. This requirement is not met by possession of an invisible amount on a common object. Our Supreme Court's decision in *State v. Reed*, rules out such a prosecution. *See* 1998-NMSC-030, ¶ 16, 125 N.M. 552, 964 P.2d 113 (holding that evidence of a quantity of cocaine on a cigarette wrapper, invisible to the naked eye, was not alone sufficient to establish the element of knowledge of possession of a controlled substance).

{19}     We also do not agree with Defendant that the crime of possession of drug paraphernalia is a lesser offense that was intended by the Legislature to apply in place of Section 30-31-23 when there is an identifiable residue of a controlled substance on paraphernalia and the individual knows that the substance is a controlled substance. Defendant analogizes to the crime of tampering with a motor vehicle by draining a gas tank or removing a wheel from a vehicle, which the

*Muqqddin* Court found the Legislature did not intend to be supplanted by the burglary statute. *See* 2012-NMSC-029, ¶ 51. In contrast, possession of drug paraphernalia has remained a distinct crime after the decisions in *Wood* and *Grijalva*, subject to separate prosecution and punishment. It was not supplanted by the crime of possession of a controlled substance. Other than this imperfect analogy to burglary and tampering with a motor vehicle, Defendant provides no support in the history or purpose of the two statutes for his argument that the Legislature intended to ignore possession of a residue of a controlled substance and punish only possession of paraphernalia.

{20} We note as well that the Legislature has amended both the paraphernalia statute and the possession statute since our decisions in *Wood* and *Grijalva*, without amending the language construed by *Wood* and *Grijalva* or otherwise indicating its disapproval of those decisions.[3] We presume that the Legislature is aware of existing law when it amends a statute. *See Aguilera v. Bd. of Educ. of Hatch Valley Schs.*, 2006-NMSC-015, ¶ 24, 139 N.M. 330, 132 P.3d 587. "In the absence of a clear legislative directive to abandon existing law, we continue to apply it." *Id.*

---

[3] In its 2022 session, our Legislature decriminalized possession of drug paraphernalia, reducing what was a misdemeanor to a penalty assessment. Section 30-31-25.1(C). We do not comment on this legislative change because the relevant amendment to Section 30-31-25.1 was enacted after the commission of the offense at issue in this case.

14

{21} As stated, we are not persuaded that *Muqqddin* rejects the plain meaning approach to Section 30-31-23 applied by this Court in *Wood* and *Grijalva*. We additionally conclude that *Wood* and *Grijalva* were not wrongly decided, nor has the longstanding construction of Section 30-31-23 has become "so unworkable as to be intolerable." Defendant has not carried his burden of "convincingly demonstrate[ing] that a past decision is wrong." *Radosevich*, 2018-NMSC-028, ¶ 21 (internal quotation marks and citation omitted). In sum, we see no reason to depart from precedent. *See State v. Gonzales*, 1990-NMCA-040, ¶ 30, 110 N.M. 218, 794 P.2d 361 ("Until we are faced with a case in which there is a reason to depart from a precedent, we will continue to apply it."). We are mindful that "the power to define crimes is a legislative function." *State v. Moss*, 1971-NMCA-117, ¶ 4, 83 N.M. 42, 487 P.2d 1347. This Court will not substitute its judgment for the Legislature's.

## II. Sufficiency of the Evidence of Defendant's Knowledge of the Nature of the Residue

{22} Defendant further contends that the evidence was insufficient to establish Defendant's knowledge that the residue was a controlled substance or a narcotic. When reviewing a challenge to the sufficiency of the evidence, we must determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Sutphin*, 1988-NMSC-031, ¶ 21.

15

**{23}** As noted above, knowledge may fairly be disputed in situations where trace amounts of controlled substances are at issue and there is no other evidence tending to establish knowledge of the nature of the substance. *See Reed*, 1998-NMSC-030, ¶¶ 14-18 (holding that the there was insufficient evidence to prove knowledge where the defendant possessed a wrapper bearing a trace amount of a controlled substance that was not immediately apparent to the human eye, and where no other corroborating evidence showing knowledge was presented). Circumstantial evidence, however, such as possession of drug paraphernalia, may support a reasonable inference of knowing possession of a controlled substance contained therein. *See id.* ¶¶ 16-17 (acknowledging that trace amounts of controlled substances found on drug paraphernalia may corroborate a defendant's knowledge); *Wood*, 1994-NMCA-060, ¶¶ 13-14 (observing that knowledge, which is rarely susceptible to direct proof, may be established by circumstantial evidence; and holding that possession of drug paraphernalia is sufficient to give rise to a reasonable inference of knowing possession of a trace amount of a controlled substance contained in the paraphernalia).

**{24}** The State's evidence conclusively established that Defendant was in possession of a clear glass pipe containing the white crystalline residue that proved to be methamphetamine. Defendant's possession of a glass pipe in his pocket, with a visible white residue inside the pipe, was sufficient to create a reasonable inference

that Defendant knew that the residue was a controlled substance. Although a glass pipe can have other uses, this was not the sort of pipe used to smoke tobacco or other legal substances.[4] Its presence in Defendant's pocket with a visible white residue clinging to it was sufficient both to allow the jury to identify the pipe as drug paraphernalia and to support a reasonable inference that Defendant knew that the white substance inside it was a controlled substance. *See generally* NMSA 1978, § 30-31-2(V)(12)(a) (2017, amended 2021) (defining "drug paraphernalia" as "materials of any kind that are used, intended for use or designed for use in . . . ingesting, inhaling or otherwise introducing into the human body a controlled substance" and specifically including glass pipes). Although Defendant argues that the testimony was insufficient for the jury to find that the residue was clearly visible to the naked eye, the pipe was introduced into evidence, allowing the jury to examine the pipe and the residue. We, therefore, reject Defendant's challenge to the sufficiency of the evidence to support his conviction for possession of a controlled substance.

---

[4] *See Conyers v. State*, 164 So. 3d 73, 76-77 (Fla. Dist. Ct. App. 2015) (describing the kind of glass pipe used in this case as "a short glass tube of a variety that, over the last thirty years, has become known as a 'pipe' because it is used to heat illegal drugs."

## III. Double Jeopardy

**{25}** Defendant contends that his convictions for possession of a controlled substance and possession of drug paraphernalia based on unitary conduct violate double jeopardy. "We review double jeopardy claims de novo." *State v. Garcia*, 2009-NMCA-107, ¶ 8, 147 N.M. 150, 217 P.3d 1048.

**{26}** "Double jeopardy protects against multiple punishments for the same offense." *State v. Silvas*, 2015-NMSC-006, ¶ 8, 343 P.3d 616. "Cases [such as this] involving violations of multiple statutes are 'double-description' cases." *Id.* In reviewing a double-description challenge where the conduct at issue is unitary, we must determine if the Legislature intended multiple punishments. *See Swafford v. State*, 1991-NMSC-043, ¶ 9, 112 N.M. 3, 810 P.2d 1223 ("[T]he polestar guiding courts is the [L]egislature's intent to authorize multiple punishments for the same offense.").

**{27}** We look first to whether either statute tells us whether the Legislature intended to create separately punishable offenses. *See id.* ¶ 8. Finding no such expression in either the possession or drug paraphernalia statute, we proceed to compare the elements of the two offenses to determine if each statute requires proof of an element the other does not. *See id.* ¶¶ 9-21. In comparing the elements of the two offenses, we look to the State's theory of the case rather than considering the elements in the abstract. *See State v. Gutierrez*, 2012-NMCA-095, ¶ 14, 286 P.3d 608 (explaining

18

that the modified *Blockburger*[5] approach "applies when one of the statutes at issue is written with many alternatives, or is vague or unspecific" and that where this is true "a reviewing court should look at the legal theory of the offense that is charged[] instead of looking at the statute in the abstract when comparing elements under *Blockburger*." (internal quotation marks and citation omitted)).

{28}     Applying this test, we conclude that Defendant's convictions required proof of distinct elements: one required proof that Defendant knowingly possessed a controlled substance (specifically, methamphetamine); and the other required proof that Defendant possessed paraphernalia (specifically, a glass pipe), with specific intent to use it. The fact that each crime requires proof of at least one different element gives rise to a presumption that the Legislature intended to punish the offenses separately. *See Silvas*, 2015-NMSC-006, ¶ 12 ("If one statute requires proof of a fact that the other does not, then the Legislature is presumed to have intended a separate punishment for each statute without offending principles of double jeopardy.").

{29}     We understand Defendant to contend that the elements of the offenses should be deemed coextensive, because the same evidence—Defendant's possession of a pipe containing methamphetamine—supplies the basis for both convictions.

---

[5]*Blockburger v. United States*, 284 U.S. 299 (1932).

However, the fact that proof of one offense may also provide direct or indirect proof of another does not pose a double jeopardy problem. This overlap in evidence is common where the conduct is unitary. Even where conduct is unitary, however, further analysis of legislative intent is required to determine if the Legislature intended to punish the conduct under two separate statutes. Insofar as each offense required proof of one or more *elements* that the other did not (e.g.) knowing possession of methamphetamine versus possession of paraphernalia with specific intent), neither offense is subsumed within the other, and the modified *Blockburger* test gives rise to a presumption that the Legislature intended the offenses to be separately punished. *See State v. Almeida*, 2008-NMCA-068, ¶ 10, 144 N.M. 235, 185 P.3d 1085.

{30}     That presumption, however, "is not conclusive; it may be overcome by other indicia of legislative intent." *Id.* ¶ 11 (internal quotation marks and citation omitted). This Court in *Almeida* analyzed the factors that weigh in favor of and against separate punishments in the context of the two offenses at issue here. *See id.* ¶¶ 14-16. We do not repeat that analysis here but instead adopt the reasoning of this Court in *Almeida*. This Court held in *Almeida* that, when the drug paraphernalia was a container used to hold the narcotic in Defendant's possession, the Legislature did not intend to punish these two crimes, which almost always occur together as separate offenses. *Id.* ¶ 18. This Court distinguished "the need for a container,"

20

something "inherent in the act of possessing [a small personal supply of a] controlled substance," from possession of other sorts of paraphernalia used to ingest drugs and that are not an inherent part of possessing the drug. *Id.* ¶¶ 18-19.

{31}    This case falls squarely into the category of possession of paraphernalia that is usually associated with drug use but is not a container inherent in the act of possession. We agree with this Court's assessment in *Alameida* "that ordinarily, i.e., when the paraphernalia at issue are items usually associated with drugs, the statutes that punish the possession of controlled substances and the possession of drug paraphernalia are intended to punish distinct wrongs." *Id.* ¶ 20 (noting that "two punishments would appear to be permitted when . . . the drugs are found inside the pipe or inside the syringe"). We conclude that when the drug paraphernalia is used to ingest drugs, rather than solely as a container to hold drugs, our Legislature intended separate punishments.

{32}    In summary, after comparing the elements of the offenses and considering other indicia of legislative intent, we conclude that the presumption of separate punishments stands. Although Defendant invokes the rule of lenity, this is not a case in which insurmountable ambiguity exists. We therefore deem the rule inapplicable, and we reject Defendant's double jeopardy challenge.

**CONCLUSION**

{33}    For the foregoing reasons, we affirm.

21

**{34}** **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Chief Judge**

_____
**JACQUELINE R. MEDINA, Judge**